UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., | ) |
| | ) No. 19 CV 7092 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| AEGIS SPINE, INC., | ) |
| | ) May 7, 2020 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

In this diversity suit, Plaintiff Life Spine, Inc. alleges that Defendant Aegis Spine, Inc. stole its confidential information and breached contractual obligations in order to develop and market a medical device that directly competes with one of Plaintiff's products. The case is in its discovery phase for purposes of addressing Plaintiff's anticipated amended preliminary injunction motion, and the parties have reached an impasse over whether Defendant must produce documents held by its foreign parent company, L&K Biomed Company, Ltd. ("L&K"). Before the court is Plaintiff's motion to compel the production of those documents. For the following reasons, the motion is granted:

**Background**[1]

Plaintiff is a medical device company that develops, manufactures, and markets surgical products, including a spinal implant device called "ProLift." Plaintiff alleges that Defendant is a medical device distributor that once served as a

---

[1] A more complete description of the allegations underlying this suit is set out in this court's previous opinion addressing Defendant's motion to dismiss. (See R. 70.)

sales representative for the ProLift device until Plaintiff discovered that Defendant was working together with L&K to promote a competing device called "AccelFix." According to the Amended Complaint, Defendant used its sales relationship with Plaintiff to access privileged and trade secret information and then violated its contractual obligations to develop AccelFix, which allegedly is a knockoff of ProLift.

L&K is a South Korean company that manufactures and markets medical devices. L&K holds 74% of Defendant's stock. It is not a party to this action, but Plaintiff alleges throughout the Amended Complaint that L&K and Defendant engaged in a joint venture to develop and bring AccelFix to the market. For example, Plaintiff alleges that in March 2019 L&K applied to the FDA for permission to market AccelFix, and that since receiving that clearance, Defendant and L&K have been working together to market AccelFix in competition with ProLift. (R. 45, Am. Compl. ¶¶ 8-9.) It further alleges that in September 2019 Defendant and L&K co-hosted an exhibit promoting AccelFix at a medical device convention. (Id. ¶¶ 62-63.) According to Plaintiff, Defendant's scheme to misuse Plaintiff's confidential information was conducted "in concert with or at the direction of L&K." (Id. ¶ 65.)

In the course of discovery Plaintiff issued discovery requests seeking information from both Defendant and L&K. For example, in Plaintiff's interrogatories and requests for production of documents, it defined the term "Aegis" to include its parent L&K, based on Plaintiff's understanding that the two entities have worked together to develop and market AccelFix. (See R. 62, Pl.'s Mot.

Ex. 1 at 3-4 & Ex. 2 at 3.) Plaintiff asserts that the close relationship between the two entities means that Defendant is able and obligated to obtain responsive information from its parent company. Defendant objects, arguing that it has no control over documents held by L&K. Although it admits that L&K is in possession of responsive documents, (see id. Ex. 3 at 5), Defendant argues that it is improper for Plaintiff to use discovery to obtain documents from a non-party, (id. Ex. 3 at 7 & Ex. 4 at 4). Plaintiff now seeks an order compelling Defendant to produce responsive information currently held by L&K.

## Analysis

Federal Rule of Civil Procedure 34(a)(1) requires a party responding to discovery requests to produce documents and information that is within its "possession, custody, or control." A party does not need to have physical possession of documents to control them within the meaning of Rule 34; "rather, the test is whether the party has a legal right to obtain them." *Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (internal quotation and citation omitted). The question of control is often highly fact-specific and requires a close look at the underlying circumstances. *See* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2210 (3d ed.). The party seeking the production of documents carries the burden of showing that the opposing party controls those documents. *Meridian Labs.*, 333 F.R.D. at 135.

In the context of a parent-subsidiary relationship, courts decide whether a subsidiary has "control" over documents in the hands of the parent by examining

3

the closeness of the entities' relationship. *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, No. 07 CV 6509, 2009 WL 780890, at *2 (N.D. Ill. March 23, 2009). If the requisite closeness exists, the court can order a domestic corporation to produce documents in the possession of its foreign parent even though the parent is not subject to the personal jurisdiction of the court. *Flavel v. Svedala Indus., Inc.*, No. 92-CV-1095, 1993 WL 580831, at *4 (E.D. Wis. Dec. 13, 1993). A number of factors inform the closeness determination, including:

> (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies.

*Meridian Labs.*, 333 F.R.D. at 135-36; *see also In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010). None of these factors alone acts as an exclusive test, but the court considers them together to determine the closeness of the relationship and to help ensure that a subsidiary does not hide responsive documents with an overseas parent company. *Flavel*, 1993 WL 580831, at *4.

As an initial matter, the court notes that Defendant relies on an incorrect standard to support its position that it has no control over documents held by L&K. Relying on *Brueder v. Board of Trustees of Community College District Number 502*, No. 15 CV 9323, 2019 WL 3386966, at *4 (N.D. Ill. July 26, 2019), Defendant asserts that the correct test is whether it has the ability to order L&K to surrender documents, (R. 77, Def.'s Resp. at 2). But *Brueder* presented a situation in which

4

the responding party and non-party entity had no corporate relationship. 2019 WL 3386966, at *4. Courts in this circuit have explicitly rejected that standard in the context of a document request targeting a corporate affiliate. *See Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-CV-01020, 2013 WL 4777206, at *5 (S.D. Ind. Sept. 5, 2013); *In re Subpoena Duces Tecum to Ingeteam, Inc.*, No. 11-MISC-36, 2011 WL 3608407, at *2 (E.D. Wis. Aug. 16, 2011).[2] In the context of a parent-subsidiary relationship, the requesting party does not have to show that the subsidiary controls the parent, only that the subsidiary can obtain the parent's documents. *See Slabaugh*, 2013 WL 4777206 at *6. That is why the inquiry focuses on the closeness of the relationship between the parent and subsidiary to decide the question of control. *See In re Subpoena*, 2011 WL 3608407, at *1.

That said, Plaintiff also has tried to oversimplify the analysis in urging the court to ignore the relevant closeness factors because, according to it, the fact that Defendant has already produced documents it received from L&K establishes that it can obtain documents from its parent company. (R. 62, Pl.'s Mot. at 7-8.) It is true that in *Slabaugh* the court rested its entire analysis on the Defendant's admission that it had produced one diagram that it acquired from its foreign parent company. 2013 WL 4777206, at *1, *6. But the court did not explain how or when the defendant obtained the diagram, or otherwise shed light on whether the parent

---

[2] Cases analyzing the "possession, custody, or control" language in Federal Rule of Civil Procedure 45 are read interchangeably with cases interpreting that language under Rule 34. *See In re Subpoena to Huawei Techs.*, 720 F. Supp. 2d at 978 n.10.

5

company provided that document in the ordinary course of business.[3] *See id.* Here, the documents Plaintiff highlights are documents Defendant requested from L&K in the ordinary course of business, before this case was filed. (R. 62, Exs. 7, 8, 9, 11.) It would be one thing if Plaintiff had shown that L&K provided these documents in response to a discovery request, but Plaintiff suggests that Defendant's production of correspondence between Defendant and L&K is enough to bypass all of the closeness factors. The exchange of documents in the ordinary course of business is just one factor among many to be considered and is not an exclusively determinative one. *See Meridian Labs.*, 333 F.R.D. at 135-36; *Flavel*, 1993 WL 580831, at *4. While Plaintiff has shown that the exchange of documents between Defendant and L&K is one factor that weighs in favor of a closeness finding, and even strongly in its favor, *see Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988) (noting that where subsidiary "can secure documents of the principal-parent to meet its own business needs," courts should not permit subsidiary to deny control), under the circumstances here that showing does not justify bypassing the remaining factors.

Turning to those factors, here the commonality of ownership weighs in Plaintiff's favor because it is undisputed that L&K owns 74% of Defendant's stock.

---

[3] To the extent Plaintiff also relies on *3D Systems Corp. v. Miller*, No. 1:17-CV-03252, 2018 WL7350939, at *4 (S.D. Ind. March 13, 2018), that reliance is misplaced. Although *3D Systems* acknowledged the *Slabaugh* approach, it explicitly weighed several of the closeness factors before relying on the fact that the defendant there did not deny that it had the ability to obtain the requested discovery from its parent corporation. *Id.* at *3-*4. Accordingly, that case provides Plaintiff little support here.

That said, even being a wholly owned subsidiary by itself is not enough to establish closeness, and here only partial ownership exists. *See Stella*, 2009 WL 780890, at *3. As for the overlapping of directors, officers, or employees between Defendant and L&K, Plaintiff has not shown that there is any current comingling in corporate management or employment, but it has shown that two of Defendant's executives are former L&K executives. (R. 62, Pl.'s Mot. Exs. 14 & 15.) That evidence suggests some measure of closeness but is not as strong as where two entities, for example, share the same president, *see 3D Systems*, 2018 WL 7350939, at *4, or have a significant overlap in management, *see Stella*, 2009 WL 780890, at *3. The non-party's benefit from the litigation and the financial relationship between L&K and Defendant are similarly neutral. Plaintiff argues that L&K will benefit if Defendant withstands an injunction in this case because it will be able to continue to sell AccelFix without encumbrance. (R. 62, Pl.'s Mot. at 12.) Although that argument identifies some level of benefit that courts have recognized, *see Meridian Labs.*, 333 F.R.D. at 138, Defendant is correct that selling its product without an injunction is the current status quo, which weakens the argument. As for the financial relationship, Plaintiff simply asserts that as a marketer of L&K's product Defendant is responsible for L&K's financial logistics in the United States. (R. 62, Pl.'s Mot. at 12-13.) That is not a persuasive framing of this factor.

  Although the above factors do not paint a convincing picture of closeness, the remaining factors, coupled with the evidence that Defendant and L&K have exchanged documents in the ordinary course of business, tip the scales toward a

7

conclusion that Plaintiff has met its burden of showing closeness. Most importantly, Plaintiff has shown that L&K has a direct connection to the transactions at issue here. It was L&K, not Defendant, that filed an application with the FDA for clearance to market AccelFix in the United States. In a press release, Defendant's Vice President of Marketing acknowledged that winning FDA clearance was the result of work produced jointly with L&K. (R. 62, Pl.'s Mot. Ex. 19.) It is also undisputed that Defendant distributes AccelFix in the United States on behalf of L&K, a factor that courts have weighed in favor of production. *See Meridian Labs.*, 333 F.R.D. at 139 ("Courts have found control under Rule 34 where a party serves as a marketer or distributer of a related non-party corporation's services."); *Afros SPA v. Krauss Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986). And Plaintiff has provided evidence of closeness beyond an arms-length producer-distributor relationship, by citing evidence that Defendant worked with L&K to launch the entire AccelFix project and was involved in meetings with L&K during the development of AccelFix. (R. 82, Pl.'s Reply Exs. 3 & 4.) There is also evidence that L&K oversaw Defendant's work on the AccelFix project through detailed weekly reports. (Id. Ex. 2; R. 62, Pl.'s Mot. Ex. 16.) This evidence of Defendant and L&K's shared business purpose in bringing AccelFix to market weighs in favor of a finding of closeness. *See Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-CV-16, 2009 WL 2408898, at *3 (E.D. Wis. July 31, 2009).

Weighing the relevant factors and considering the context of Defendant and L&K's shared work on the product at the heart of this litigation and past exchange

8

of documents, the court finds that Plaintiff has met its burden of showing that Defendant's relationship with L&K is sufficiently close to give it the ability to obtain responsive information currently in L&K's possession.

## Conclusion

For the foregoing reasons, Plaintiff's motion to compel is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**