# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LIFE SPINE, INC.,** | ) | |
| | ) | **No. 19 CV 7092** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **AEGIS SPINE, INC.,** | ) | |
| | ) | **May 4, 2021** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

On March 15, 2021, following a nine-day evidentiary hearing, the court granted Life Spine, Inc.'s ("Life Spine") motion for a preliminary injunction and entered an order enjoining Aegis Spine, Inc. ("Aegis") from, among other things, distributing, marketing, or transferring any rights to the AccelFix-XT line of medical implant devices. (R. 213.) Aegis has appealed the preliminary injunction order to the Seventh Circuit Court of Appeals, and now moves the court for a stay of the preliminary injunction pending the appeal's outcome. For the following reasons, the motion is denied:

## Analysis

The standard that applies to a request for a stay pending appeal largely mirrors that which governs the preliminary injunction analysis. *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). The court considers: "(1) the likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure other parties; and (4) the public interest." *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020). The court weighs these factors on a "sliding scale," meaning the greater the movant's likelihood of success the less the other factors must weigh in its favor, and vice versa. *In re A & F Enters.*, 742 F.3d at 766.

Having reviewed Aegis's motion for a stay and considering its arguments, the court concludes that Aegis fails to make a persuasive showing with respect to the merits of its appeal for two reasons. First, Aegis's motion addresses only one of the many substantive bases underlying the preliminary injunction order—the court's finding that Life Spine is likely to succeed on the merits of its trade secrets claims pertaining to the precise dimensions and interconnectivity of the ProLift's components. Even if the Seventh Circuit agrees with Aegis's argument in that respect, it could still affirm the preliminary injunction based on the court's finding that Life Spine is likely to succeed on other grounds. Without rehashing the reasons set out at length in the court's opinion accompanying the preliminary injunction order, (see R. 212), the court concluded that Life Spine has a high likelihood of success on its breach of contract, fiduciary duty, and declaratory judgment claims based on evidence that, among other things, Aegis took calculated steps to help copy or reverse engineer the ProLift implant, disclosed Life Spine's confidential information to third parties, shipped the ProLift implant to a third party without Life Spine's knowledge or permission, and failed to train its employees regarding its contractual confidentiality obligations. The court also

concluded that Life Spine is likely to succeed on its trade secrets claims with respect to testing and pricing data. Aegis's failure to address any of these alternate grounds on which the Seventh Circuit could uphold the preliminary injunction order gives it rocky footing with respect to the first stay factor.

Second, even if those alternative bases did not exist, Aegis's argument with respect to the trade secret claims is unpersuasive. Despite the court's finding that substantial evidence supports Life Spine's assertion that it derives value from and takes reasonable steps to protect the secrecy of the precise dimensions and specifications of the ProLift's components, Aegis insists that the ProLift is "in the public domain." (R. 232, Def.'s Mem. at 10.) Aegis points to the ProLift patents, but not to evidence that those patents disclose precise measurements or dimensions. To the extent its assertion rests on Life Spine's display of the ProLift implant at trade shows, the evidence demonstrated that Life Spine allows only supervised viewing of the ProLift in that context, and it is impossible to discern the exact measurements or interconnectivity of the ProLift components from simply looking at the device. Instead, a competitor would need unfettered access to the ProLift implant and sophisticated measurement technology to access that information. (R. 212, Mem. Op. at 5, 47.)

Although Life Spine's distributors—who are bound by confidentiality provisions—sell the ProLift to hospitals or downstream purchasers, Aegis has not persuasively argued that such sales translate to the ProLift implants being publicly available in the stream of commerce. The evidence showed that ProLift distributors

maintain oversight responsibilities for the ProLift implants they sell to hospitals prior to the devices' insertion in scheduled surgeries. (See id. at 48.) Aegis's argument with respect to downstream purchasers includes the rather macabre suggestion that a surgeon might remove a ProLift implant from a patient's spine and then hand it over to someone who wants to measure its dimensions. (R. 232, Def.'s Mem. at 9.) Aegis points to no evidence to support this hypothetical, but more importantly, Life Spine's trade secret claim does not require it to show that it takes every conceivable step to protect its trade secret information. Instead, Life Spine must take reasonable steps to preserve that information. *See Moss Holding Co. v. Fuller*, No. 20 CV 1043, 2020 WL 1081730, at *6 (N.D. Ill. March 6, 2020) (noting that a plaintiff need not take "every conceivable measure to keep its information secret" in order to preserve trade secret protection).

With respect to the remaining factors, Aegis's motion does not raise any considerations that the court failed to account for when issuing the preliminary injunction. Aegis argues that it will be harmed by lost sales during the appeal's pendency, but Life Spine has posted a significant bond to protect against those losses should Aegis prevail. Aegis survived for years as a company before the AccelFix-XT existed, and the preliminary injunction allows it to continue distributing other spinal implants and medical devices. It has not persuasively shown an inability to withstand the injunction during the pendency of what it anticipates will be an expedited appeal. The court's preliminary injunction opinion catalogues at length the irreparable harm facing Life Spine in the absence of the

injunction, (R. 212, Mem. Op. at 59-61), and those reasons apply equally here. Finally, Aegis asserts in a single sentence, without providing any supporting evidence, that the public interest in accessibility to and lower prices for medical devices weighs toward a stay. (R. 232, Def.'s Mem. at 13.) But the hearing evidence suggests that the medical device market is already extremely competitive, and that distributors and manufacturers are under great pressure to lower prices because of the bargaining power wielded by hospitals and large purchasing groups. Weighing the relevant factors together, the court concludes that a stay pending appeal is not warranted.

## Conclusion

For the foregoing reasons, Aegis's motion to stay the preliminary injunction pending the appeal's outcome is denied.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**