UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., ) | |
| ) | No. 19 CV 7092 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| AEGIS SPINE, INC., ) | |
| ) | November 18, 2021 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

In this diversity suit, Plaintiff Life Spine, Inc. ("Life Spine") alleges that Defendant Aegis Spine, Inc. ("Aegis") stole confidential information and breached contractual obligations to develop and market a medical device that directly competes with one of Life Spine's products. The parties have once again reached an impasse over whether Aegis must produce documents held by its foreign parent company, L&K Biomed Co., Ltd. ("L&K"), despite the court's prior ruling on a similar issue. (R. 88.) This time, Life Spine seeks materials related to "follow-on" devices it alleges Aegis and L&K developed using Life Spine's technology. Before the court is Life Spine's motion to compel these materials. For the following reasons, the motion is granted in part and denied without prejudice in part:

**Background**

Life Spine is a medical device company that develops, manufactures, and markets surgical products, including a spinal implant device that uses an expandable cage called "ProLift." Aegis is a medical device company that markets

and sells medical devices to treat spinal conditions. L&K is a South Korean company that manufactures and markets medical devices and is a direct competitor of Life Spine. L&K is also Aegis's foreign parent company, holding 74% of Aegis's stock. For several months in 2018, Aegis and Life Spine shared a distribution relationship in which Aegis sold the ProLift device. Life Spine alleges that Aegis worked with L&K to steal Life Spine's trade secret information regarding ProLift and to develop a competing expandable cage spinal implant device—the "AccelFix-XT"—in violation of Aegis's contractual obligations to Life Spine.

Life Spine brought this action against Aegis in October 2019, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 1; R. 43). During the discovery that followed, the court found that Aegis and L&K share a sufficiently close relationship that Federal Rule of Civil Procedure 34(a)(1) requires Aegis to produce discoverable documents held by L&K. (R. 88 ("the May 7, 2020 order").) Life Spine then sought a preliminary injunction against Aegis in August 2020. (R. 114.) The court held a nine-day evidentiary hearing before granting Life Spine's motion in March 2021. (R. 212.)

Following entry of the preliminary injunction, the parties continued discovery in preparation for trial. In June 2021 Life Spine served discovery requests on Aegis seeking "materials related to expandable cages that bear marked similarities to AccelFix-XT: AccelFix XL, -XTP, and XTP5; AccelFix-XA and -XAI; AccelFix-XCI (also marketed as CastleLoc-XCI); and several iterations of AccelFix-XT itself, namely AccelFix-EXT, -CXT, and -XT-N15" (collectively, "the follow-on devices").

2

(R. 295, Pl.'s Br. at 3; see also R. 293-2, Pl.'s Br. Ex. 2 (Life Spine's Fourth Requests for Production of Documents); R. 293-3 Pl.'s Br. Ex. 3 (Life Spine's Second Set of Interrogatories).) Aegis has produced the documents in its possession relating to XL and XTP,[1] and has further offered to produce the XL and XTP devices for Life Spine's inspection. (See R. 308, Def.'s Resp. at 3, 9.) Life Spine argues, however, that Aegis must produce not only documents in its immediate possession, but also responsive materials held by L&K, including design history files for the follow-on devices. Life Spine seeks an order compelling Aegis to produce such materials.

## Analysis

In asking the court to issue an order compelling Aegis to produce materials relating to the follow-on devices held by L&K, Life Spine contends that the court's May 7, 2020 order—or at least the same underlying reasoning—requires Aegis to produce L&K documents. (See R. 295, Pl.'s Br. at 5-10.) Life Spine also argues that information relating to the follow-on devices is relevant to its trade secrets, contract, common law, and declaratory judgment claims. (See id. at 10-14.) Aegis objects on relevance and proportionality grounds and asserts that it should not be required to produce L&K documents. (See R. 308, Def.'s Resp. at 10-15). The court first considers whether Aegis must produce documents held by L&K as a general matter, under the law of the case doctrine or otherwise. The court then examines Aegis's relevance and proportionality objections to the production of documents concerning the follow-on devices.

---

[1] For the sake of brevity, the court follows the parties' practice of referring to the devices at issue by their suffixes (e.g., "XL," instead of "AccelFix XL").

3

A.      **Obligation to Produce**

The court reaffirms that Aegis and L&K have a sufficiently close relationship to require Aegis to produce responsive L&K documents under Rule 34. As the court explained in its May 7, 2020 order, (see R. 88 at 3-4), Federal Rule of Civil Procedure 34(a)(1) requires a party responding to discovery requests to produce documents and information that is within its "possession, custody, or control." A party does not need to have physical possession of documents to control them within the meaning of Rule 34. "[R]ather, the test is whether the party has a legal right to obtain them." *Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (internal quotation marks and citations omitted). The question of control is often fact-specific and requires a close look at the underlying circumstances. *See* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2210 (3d ed.). The party seeking the production of documents carries the burden of showing that the opposing party controls those documents. *Meridian Labs.*, 333 F.R.D. at 135.

In the context of a parent-subsidiary relationship, courts decide whether a subsidiary has "control" over documents in the hands of the parent by examining the closeness of the entities' relationship. *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, No. 07 CV 6509, 2009 WL 780890, at *2 (N.D. Ill. March 23, 2009). If the requisite closeness exists, the court can order a domestic corporation to produce documents in the possession of its foreign parent even though the parent is not subject to the personal jurisdiction of the court. *Flavel v. Svedala Indus., Inc.*, No. 92 CV 1095, 1993 WL 580831, at *4 (E.D. Wis. Dec. 13, 1993). A number of factors inform the closeness determination, including:

4

> (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies.

*Meridian Labs.*, 333 F.R.D. at 135-36; *see also In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010). None of these factors alone serves as an exclusive test, but the court considers them together to determine the closeness of the relationship and to help ensure that a subsidiary does not hide responsive documents with an overseas parent company. *Flavel*, 1993 WL 580831, at *4.

Applying this legal framework, the court held in its May 7, 2020 order that Life Spine had "met its burden of showing that [Aegis's] relationship with L&K is sufficiently close to give it the ability to obtain responsive information currently in L&K's possession." (R. 88 at 9.) In reaching this conclusion, the court found that the exchange of documents in the ordinary course of business, commonality of ownership, L&K's connection to the transactions at issue, and evidence of Aegis and L&K's "shared business purpose in bringing AccelFix to market" all weighed in favor of a finding of closeness. (Id. at 6-8.) The court further found that the movement of executives between companies, despite the lack of any "current comingling in corporate management," provided evidence of closeness, and that the "benefit from litigation" and "financial relationship" factors had neutral weight. (Id. at 7.)

5

In responding to the present motion, Aegis has failed to provide any compelling reason why the court should revisit the May 7, 2020 order. Under the law of the case doctrine, a "ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 CV 739, 2019 WL 1787547, at *3 (N.D. Ill. April 24, 2019) (quoting *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004)). The doctrine provides "a presumption against revisiting previously decided issues," *SFG, Inc. v. Musk*, No. 19 CV 2198, 2021 WL 972887, at *1 (N.D. Ill. Feb. 10, 2021), unless "a compelling reason, such as a change in, or clarification of, law . . . makes clear that the earlier ruling was erroneous," *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). Here, Aegis merely reiterates its objection that "given Life Spine's strategic choice not to add L&K as a party, it is not proper to seek party-style discovery from L&K." (R. 308, Def.'s Resp. at 14.) But the court already considered this objection in its May 7, 2020 order. (See R. 88 at 3.) As such, it is neither a new argument nor a compelling reason showing clear error in the prior decision. *See Quinn v. Specialized Loan Serv'g, LLC.*, 414 F. Supp. 3d 1122, 1126 (N.D. Ill. 2019). Absent such a showing, the court declines to revisit its prior ruling.

Aegis also tries to remove the present motion from the scope of the May 7, 2020 order, arguing that two major differences prevent the court from reaching an analogous outcome here: (1) L&K has terminated a previous technology transfer agreement it had with Aegis, (see R. 308, Def.'s Resp. at 14); and (2) Life Spine is unable to present evidence of collaboration between L&K and Aegis to the same

6

degree for the follow-on devices as existed for the XT device, (see Oct. 27, 2021 Hr'g Tr. at 26). As an initial matter, it is unclear why termination of the technology transfer agreement requires a different outcome here. As correctly pointed out by Life Spine at the motion hearing, the agreement was not executed until August 2020, (see R. 295, Pl.'s Br. Ex. 1), and the court did not rely on it to find in the May 7, 2020 order that Aegis and L&K exchanged documents in the ordinary course of business, (see R. 88 at 6 (citing R. 62, Pl.'s Exs. 7, 8, 9, 11)). And regardless of whether the technology transfer agreement is no longer active,[2] the agreement's existence demonstrates that Aegis and L&K envisioned the wholesale and systemic transfer of documents to advance their business interests. The technology transfer agreement, therefore, provides further evidence of the close relationship between Aegis and L&K.

Furthermore, in protesting the lack of "evidence of a connection between Aegis and L&K's design of the other devices at issue in this Motion," (R. 308, Def.'s Resp. at 14), Aegis ignores a substantial portion of Life Spine's brief in which it provides evidence of the close relationship between Aegis and L&K, (see R. 295, Pl.'s Br. at 6-9). Several facts in particular stand out. First, Life Spine has identified a steady exchange of information and documents between Aegis and L&K related to the follow-on devices separate from the technology transfer agreement. (See R. 295, Pl.'s Br. Exs. 17, 18, 19, 20.) Second, L&K's involvement in this litigation appears

---

[2] The court notes that Aegis has not adequately explained how the agreement has been terminated given that § 5.1 states that the agreement "shall be in effect for two (2) years" and no other provision gives L&K or Aegis the unilateral right to terminate the same. (See R. 295-1, Pl.'s Br. Ex. 1; Oct. 27, 2021 Hr'g Tr. at 24.)

7

to have substantially increased since the May 7, 2020 order. Shareholder communications indicate that L&K is actively making decisions regarding Aegis's litigation strategy. (See R. 293-23, Pl.'s Br. Ex. 23 ("We have replaced . . . [Aegis's] law firm in Colorado, with a large law firm specializing in intellectual property disputes and are preparing for full-fledged proceedings while going forward with appeals against the injunction."); R. 293-25, Pl.'s Br. Ex. 25 ("We will minimize the potential risk to our company by accelerating the litigation on the merits and obtaining the conclusion of this lawsuit as quickly as possible.").) Both of these factors weigh in favor of a finding of the requisite closeness.

Finally, as before, Life Spine "has provided evidence of closeness beyond an arms-length producer-distributer relationship." (R. 88 at 8.) Patent filings for XTP list Aegis's CEO Youngbo Ahn as an inventor. (See R. 316-1, WIPO Patent Application; R. 324, Def.'s Resp.) Aegis and L&K both submitted 510(k) applications with the United States Food and Drug Administration ("FDA") for XT, XL, and XTP, and Aegis's submission describes these products as having "identical technological characteristics" to the devices submitted for approval by L&K. (See R. 293, Pl.'s Br. Exs. 9, 13.) Even without the technology transfer agreement, other agreements remain in effect for Aegis to market and sell XL and XTP. (Oct. 27, 2021 Hr'g Tr. at 23-24.) And despite indicating that XL and XTP are the only follow-on devices Aegis markets and sells, (id. at 21), Aegis also worked on and produced to Life Spine the design history file for XAI. (Id. at 31-32.) As before,

8

"[t]his evidence of [Aegis] and L&K's shared business purpose in bringing [follow-on devices] to market weighs in favor of a finding of closeness." (R. 88 at 8.)

In short, not only has Aegis failed to offer any argument as to why the court should reconsider the May 7, 2020 order, but Life Spine has presented even more evidence supporting the conclusion that Aegis has "control" of responsive L&K materials within the meaning of Rule 34. *See Meridian Labs.*, 333 F.R.D. at 135-36. Aegis, meanwhile, has presented no evidence to the contrary. As a result, the court once again finds that Life Spine "has met its burden of showing that [Aegis's] relationship with L&K is sufficiently close to give it the ability to obtain responsive information currently in L&K's possession." (R. 88 at 9.)

**B.     Relevance and Proportionality**

Moving on to the substance of the motion to compel, Life Spine contends that documents regarding the follow-on devices are relevant to its trade secrets, contract, common law, and declaratory judgment claims. Aegis argues that alleged use of the same "lifting mechanism" as ProLift in the follow-on devices cannot be relevant to these claims because information regarding the lifting mechanism was non-confidential and voluntarily disclosed to the public. (See. R. 308, Def.'s Resp. at 10-12.) Aegis further argues that even if such materials have some "minimal relevance" to Life Spine's claims, the broad discovery Life Spine seeks amounts to little more than "a fishing expedition" through L&K's files. (Id. at 15.)

Federal Rule of Civil Procedure 26(b)(1) is broad, allowing parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." It is well-established that

9

"[b]ecause the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Although the burden of establishing relevancy rests initially on the party requesting discovery, the burden shifts to the objecting party to show why the request is improper if the discovery appears relevant. *See Eternity Mart, Inc. v. Nature's Sources, LLC*, 19 CV 2436, 2019 WL 6052366, at *2 (N.D. Ill. Nov. 15, 2019). Additionally, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Coleman v. Ill.*, No. 19 CV 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020).

Here, the court is satisfied as to the relevance of information related to the follow-on devices. In contending that ProLift's lifting mechanism was nonconfidential and publicly disclosed, Aegis misses the nuance of Life Spine's argument. Life Spine contends Aegis and L&K used Life Spine's trade secrets—the "detailed measurements of the dovetailed interface between the endplates and wedges in ProLift," not the lifting mechanism—to create the XT, and then quickly scaled up the XT into a wider range of follow-on devices by using those same measurements and measurement ratios wrongfully acquired from ProLift. (R. 295, Pl.'s Br. at 12; see also Oct. 27, 2021 Hr'g Tr. at 9-11.) Aegis argues that the difference in size and function between XT and the follow-on devices (particularly XL and XTP) make this theory implausible, if not impossible. (See R. 308, Def.'s Resp. at 2.) Perhaps so. But in a case involving precise measurements and complex

10

medical devices, the court is unwilling to disregard Life Spine's theory based on nothing more than eyeballing the products in question. Life Spine has made a reasonable—if technical—argument as to how Aegis may have used the ProLift measurement ratios to develop the follow-on devices. Consistent with the "permissive discovery" envisioned by Rule 26, the court is satisfied as to the relevance of materials regarding the follow-on devices. *See Coleman*, 2020 WL 5752149, at *3.

Aegis's proportionality argument, however, carries some weight. Rule 26 directs courts to evaluate proportionality in discovery requests by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The court views relative access to information and burden/benefit analysis as the most important factors in resolving the present dispute. On the one hand, Life Spine has very little access to information regarding the follow-on devices, and likely will be unable to draw on evidence regarding the follow-on devices in support of its claims without the requested discovery. On the other hand, Life Spine seeks discovery into the follow-on devices largely to vindicate its suspicions, not because it *knows* the information will ultimately prove useful to this case. Aegis and L&K, meanwhile, face involuntary disclosure of their own trade secrets and proprietary

11

technologies if the court grants Life Spine's motion. *See AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001).

To balance these competing interests, the court orders Aegis to produce the design history files for XL and XTP. The parties have focused much of their argument on these two products, as they appear to be the most fully developed of the follow-on devices and about which the most information is currently available. (See generally R. 295, Pl.'s Br.; R. 308, Def.'s Resp.; Oct. 27, 2021 Hr'g Tr.) Importantly, Life Spine has also presented evidence indicating that XL and XTP were developed as one system alongside XT, possibly incorporating Life Spine technology in their designs. (See R. 295, Pl.'s Br. at 12-13.) The XT design history file shows that XL and XTP were designed to incorporate the same lifting mechanism as XT, (see R. 295, Pl.'s Br. Ex. 12), and that XT testing data was used to establish the mechanical performance of XL and XTP, (see id. Ex. 30). Furthermore, Aegis and L&K together presented XT, XL, and XTP to the FDA as one expandable cage system. (See id. Exs. 9 (Aegis 510(k) submission), 13 (L&K 510(k) submission).) In light of this evidence, Life Spine's need for more information to investigate whether its technology was used in the designs of XL and XTP outweighs the burden of production on Aegis and L&K, and responsive materials for XL and XTP must be produced.

However, the court declines to order production of documents related to the other follow-on devices at this time. Life Spine has convinced the court that "there's a lot of smoke" as to XL and XTP, (Oct. 27, 2021 Hr'g Tr. at 5, 12), but the reasoning

12

is much more attenuated for the remaining follow-on devices. Considering Aegis and L&K's strong interests in protecting their products and technologies, Life Spine's conjecture that it may find evidence of additional wrongdoing cannot outweigh the burdens such broad discovery would impose on Aegis and L&K. Additionally, if Life Spine's investigation into the design history files of XL and XTP proves fruitless, then it is unlikely that discovery into the other follow-on devices would yield better results. Limiting discovery at this time therefore conserves the time and resources of the parties and their counsel and avoids a potentially costly and useless search.

The court's ruling in this regard is not a final determination as to the other follow-on devices. Aegis has already provided Life Spine with the design history file for XAI, (see Oct. 27, 2021 Hr'g Tr. at 31), and the files for XL and XTP will soon be produced pursuant to this order. If Life Spine's review of these records gives it reason to believe that Life Spine technology was used in the development of XL, XTP, or XAI, it may renew its motion to compel discovery into the other follow-on devices. The court agrees with Life Spine that there is smoke, and orders limited discovery to allow Life Spine to investigate further. If Life Spine finds what it believes to be fire, then additional discovery into the full range of follow-on devices may be appropriate. Until such time, however, the broad discovery Life Spine seeks is not proportional to the current needs of the case.

## Conclusion

For the foregoing reasons, Life Spine's motion to compel is granted in part insofar as Life Spine seeks production of design history files for XL and XTP in L&K's possession. Life Spine's motion is denied without prejudice to the extent Life Spine seeks responsive materials related to the other follow-on devices.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**