UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIFE SPINE, INC., | ) | |
| | ) | No. 19 CV 7092 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AEGIS SPINE, INC., | ) | |
| | ) | January 31, 2022 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

In this diversity suit, Plaintiff Life Spine, Inc. ("Life Spine") alleges that Defendant Aegis Spine, Inc. ("Aegis") stole confidential information and breached contractual obligations to develop and market a medical device that directly competes with one of Life Spine's products. Following entry of a preliminary injunction in March 2021 ("the PI Order"), Life Spine alleges that Aegis and its foreign parent company, L&K Biomed Co., Ltd. ("L&K"), violated that order by continuing to prosecute certain patents. Before the court is Life Spine's motion for rule to show cause seeking a contempt finding against Aegis and L&K for violating the PI Order. For the following reasons, the motion is denied:

**Background**[1]

Life Spine is a medical device company that develops, manufactures, and markets surgical products, including a spinal implant device that uses an

---

[1] This court's previous opinion granting Life Spine's motion for preliminary injunction provides a more complete description of the allegations underlying this suit. (See R. 212.)

expandable cage called "ProLift." Aegis is a medical device company that markets and sells medical devices to treat spinal conditions. Aegis's parent company L&K is a South Korean company that manufactures and markets medical devices and competes with Life Spine. For several months in 2018, Aegis and Life Spine shared a distribution relationship in which Aegis sold the ProLift device. Life Spine alleges that Aegis worked with L&K to steal Life Spine's trade secret information regarding ProLift and develop a competing expandable cage spinal implant device—the "AccelFix-XT"—in violation of Aegis's contractual obligations to Life Spine.

Life Spine brought this action against Aegis in October 2019 and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 1; R. 43). Life Spine then sought a preliminary injunction against Aegis in August 2020, (R. 114), and after an evidentiary hearing, the court granted Life Spine's motion in March 2021, (R. 212). In the PI Order this court directed, in relevant part, that:

> Defendant Aegis Spine, Inc. ("Aegis"), its officers, agents, servants, employees, attorneys, any business entities and/or persons controlled directly or indirectly by Aegis, and any business entities and/or persons in active concert or participation with Aegis are hereby enjoined until this case is resolved on the merits from . . . [s]eeking or obtaining any patents or other forms of intellectual property protection for any trade secrets, confidential information, testing data, applications for regulatory clearance, technologies, or manufacturing processes for, underlying, or embodied in the ProLift or AccelFix-XT lines of medical devices.

(R. 213 at 1-2.)

Following entry of the PI Order, Life Spine alleges that Aegis and L&K continued to prosecute four patent applications related to the AccelFix-XT technology. These include two design patents issued by the United States Patent

and Trademark Office ("USPTO") in August 2021—U.S. Pat. No. D929,594 and U.S. Pat. No. D930,160—and two utility patent applications that remain pending—U.S. Pat. Appl. Pub. No. 2021/0259848 and U.S. Pat. Appl. Pub. No. 2021/0259855 (collectively, "the subject patent applications"). (See R. 322, Pl.'s Mot. at 2-5.) The subject patent applications were filed more than a year before the entry of the PI Order. (See R. 335, Def.'s Resp. at 5.)

## Analysis

Life Spine asks the court to hold Aegis, L&K, and certain of their officers in contempt for continuing to prosecute the subject patent applications in violation of the PI Order. Aegis does not dispute that prosecution of the subject patent applications continued after the court entered the PI Order or that they pertain to the AccelFix-XT technology. (See R. 355, Def.'s Resp. at 3-8.) However, Aegis argues that because Life Spine failed to demonstrate by clear and convincing evidence that the PI Order included an unambiguous command as to how Aegis should have proceeded with the subject patent applications, it cannot be held in contempt for continuing to prosecute them. Aegis could have avoided the current motion by seeking clarity from the court in early 2021. Nonetheless, the court agrees with Aegis on the core issue—clear and convincing evidence of an unambiguous command is lacking as to the subject patent applications.

The power to hold a party in civil contempt stems from the court's "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d

694, 699 (7th Cir. 2001). Civil contempt is a "severe remedy" that "should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (emphasis in original). As such, the Seventh Circuit requires the party seeking a finding of contempt to "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

In the current motion, Life Spine assumes that the PI Order includes within its reach the subject patent applications, and neglects to analyze whether that order sets forth an unambiguous command as to those applications under the clear and convincing evidence standard. (See R. 322, Pl.'s Mot. at 10.) Indeed, Life Spine never defines what the PI Order's prohibition on "seeking or obtaining any patents" means, instead placing this language in bold and italicized type to suggest that the clause's meaning is self-evident. (R. 322, Pl.'s Mot. at 2, 8-9.) At the January 13, 2022 hearing on this motion, Life Spine clarified that it interprets the PI Order to prohibit any and all work on any patents related to the AccelFix-XT technology, regardless of whether Life Spine had knowledge of that work when the PI Order issued. (R. 356, Hr'g Tr. at 15.) But even then, Life Spine did not explain why the PI Order unambiguously commands that result.

4

The court agrees with Life Spine that the relevant prohibition language is broad. But Life Spine's position ignores the many nuances, deadlines, and statutory requirements of the patent application process, as Aegis rightly points out. (See R. 355, Def.'s Sur-Reply at 5 ("It is neither routine nor standard to pause the prosecution of a long-pending patent application. There are myriad rules and nuances that must be addressed, and no one rule fits all application types or stages.").) Although a prohibition on "seeking or obtaining any patents" appears at first glance to apply to pending patent applications, in practice such language provides little guidance to the enjoined party on this issue. Does such language command Aegis to stop all prosecution of pending patent applications? If so, Aegis contends that it would have been forced to abandon the subject patent applications and lose intellectual property relating to those applications—irreparably damaging Aegis if it were to prevail in this lawsuit. (See R. 335, Def.'s Resp. at 9-12.) Does this language simply not apply to pending patent applications, as Aegis and L&K apparently believed? (See R. 356, Hr'g Tr. at 28.) Such an interpretation would fly in the face of the clear spirit of the PI Order, according to Life Spine. (See generally R. 322, Pl.'s Mot.; R. 347, Pl.'s Reply.) Or does such language require Aegis to formulate some middle ground that suspends patent applications pending the outcome of this lawsuit?

Life Spine contends that at the very least Aegis should have understood the PI Order to require it to take this last option, arguing that USPTO rules "provide for multiple procedures that Aegis could have followed to temporarily refrain from

5

seeking or obtaining patents in the AccelFix-XT." (R. 347, Pl.'s Reply at 3 (citing 37 C.F.R. §§ 1.136, 1.103, and 1.78).) At the motion hearing, Life Spine provided an even more explicit statement as to the path Aegis should have followed:

> "[Aegis] need[s] to take all options available to them for extensions . . . and once all of the options for extension are used, then they need to file the continuation application. Then, you know, we see how far that gets us. Then I think if they have to go through the process again, they should do it."

(See R. 356, Hr'g Tr. at 14.) At the same time, however, Life Spine concedes that USPTO has discretion over whether to grant extensions—extensions which are short in duration—and that filing a continuation application itself might violate the PI Order under Life Spine's interpretation. (Id. at 12.) Thus, what Life Spine essentially seeks here is a finding that the PI Order's prohibition on "seeking or obtaining any patents" requires Aegis to embark down an uncertain path of pursuing deadline extensions involving USPTO discretion and, once it exhausts all options for extension, to file continuation applications that themselves may violate the PI Order.

Aegis is not far off in arguing that it would need a "Rosetta Stone" to reach this interpretation, (id. at 26), and it strains credulity to believe that an injunction against "seeking or obtaining any patents" has such a specific and technical meaning regarding pending patent applications absent more detail. *Cf. Sleep No. Corp. v. Young*, 532 F. Supp. 3d 793, 805-07 (D. Minn. 2021) (issuing injunction with specific instructions as to how the enjoined party should proceed with its pending patent applications). Furthermore, Life Spine has presented no evidence

6

showing that Aegis ever understood this language to include such a specific and technical meaning. As a result, Life Spine has failed to demonstrate by clear and convincing evidence that the PI Order sets forth an unambiguous command as it applies to the subject patent applications. *See Hyatt*, 621 F.3d at 692. Accordingly, this court cannot hold Aegis, L&K, or their officers in contempt for violating the PI Order because there is "a fair ground of doubt" as to the wrongfulness of Aegis's and L&K's responses to USPTO's actions in connection with the subject patent applications. *Taggart*, 139 S. Ct. at 1801-02 (emphasis omitted). That said, the court believes that Aegis and L&K could have avoided this motion practice if they had challenged the broad application of the PI Order with this court or the Seventh Circuit, instead of plunging forward without pausing.

## Conclusion

For the forgoing reasons, Life Spine's motion for rule to show cause is denied.

**ENTER:**

*[signature]*

**Young B. Kim
United States Magistrate Judge**