**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIFE SPINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-07092 |
| | ) | |
| v. | ) | Hon. Mag. Young B. Kim |
| | ) | |
| AEGIS SPINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AEGIS' RENEWED MOTION TO UNSEAL**

Aegis brings this renewed motion to unseal Aegis's Motion to Compel (Dkts. 337 and 340 (public version)) and Aegis' Motion for Reconsideration (Dkt. 359 and 363 (public version)), each of which sought production of documents and information related to Life Spine's obtaining and analyzing *third parties*' devices. The relief Aegis seeks is simple: the briefs and underlying facts considered by the Court in deciding these motions should be unsealed. Only the few instances where there is a genuine claim that sealed information considered by the Court is *Life Spine*'s trade secret (*e.g.*, specific measurements of ProLift) should be redacted.

Aegis's motions sought information about *third party* products (not ProLift), and the fact that Life Spine acquired third party products—or that it analyzed them—cannot be Life Spine's trade secret. Unfortunately, the simple and otherwise routine exercise of creating public versions of these materials that conform to clear Seventh Circuit law has turned into a cumbersome back and forth in which Life Spine continues to redact information central to the motions that is neither trade secret nor privileged. *See* Exhibit A (Mar. 11, 2022 Email from R. Ginsburg with Life

Spine's proposed redactions).[1] As is evident from its latest proposed redactions, Life Spine ignores controlling law and seeks sealing based merely on Life Spine's say-so. That is not the law. The public, and Aegis (beyond its outside counsel), have a right to know and understand the (non-trade-secret) facts upon which the Court relied in denying Aegis's motions. Life Spine's unsupported assertions that information is private or confidential is not sufficient to override those rights. Aegis respectfully requests that the Court unseal this limited material.

Specifically, Aegis asks that the Court unseal the briefs in support of each motion, and those portions of the exhibits specifically discussed by Aegis or directly referenced by the Court. *See e.g.* Dkt. 351 (denying Aegis's motion to compel and reasoning "[a]lthough Defendant's presentation in its motion has facial appeal, *Plaintiff's FDA submissions themselves* are not enough to cast sufficient doubt on Plaintiff's representation to force Plaintiff to produce responsive documents and things it says it does not have." (emphasis added)). In moving to compel, Aegis provided a fulsome exhibit set illustrating generally the discovery that had occurred and the need for more. Some exhibits, such as Exhibit G (Dkt. 337-7), provide context for Aegis' Motion and were only cited in passing. Aegis does not seek to burden Life Spine or the Court with redacting such voluminous background information. Other exhibits, however, primarily Exhibits E (Dkt. 337-5), F (Dkt. 337-6), H (Dkt. 337-8), and L (Dkt. 337-12) were discussed at length, and relate to the heart of the matter. *See* Dkt. 337 at 5-8. Accordingly, Aegis' Motion to Unseal seeks to unseal the following:

a) Aegis's Motion to Compel (Dkt. 337 (limited to the brief itself));

[1] The specific documents that Aegis requests be unsealed are attached as Exhibit B, submitted under seal. The Life Spine redactions that Aegis opposes (because they are neither trade secret nor privileged) are reflected in light blue highlighting. The legitimate redactions, that Aegis does not oppose, are highlighted in pink.

b) Aegis's Motion for Reconsideration (Dkt. 359 (limited to the brief itself));

c) The following portions of the deposition transcript of Madeline Wolters, attached as Exhibit E to Aegis's Motion (Dkt. 337-5), and cited in either the Motion to Compel or Motion for Reconsideration: Pages 17, 18, 19, 23, 24, 49, 50, 51, 79;

d) Life Spine's September 2015 Letter to the FDA, Exhibit F to Aegis's Motion to Compel (Dkt. 337-6);

e) Appendix I to Life Spine's FDA Submission Regarding ProLift, Exhibit H to Aegis's Motion to Compel (Dkt. 337-8); and

f) The June 2019 cover email and attached draft FDA Submission between Madeline Wolters, Angela Batker, Randy Lewis, and Garrett Laud, Exhibit L to Aegis's Motion to Compel (Dkt. 337-12).[2]

The law is clear that any sealing, especially where central to a judicial determination, should be limited to information that is actually trade secret or privileged. But comparing Aegis's

[2] Aegis's original motion to unseal (Dkt. 366) sought to unseal Dkts. 337 and 359 in their entireties. Life Spine contacted Aegis regarding confidential information of *both* parties that appeared in Life Spine's discovery responses (*e.g.*, Life Spine's Interrogatory Responses attached as Ex. B to Dkt. 359 (Dkt.366-2)). Recognizing that it would be burdensome to ask Life Spine to redact irrelevant discovery responses, and to ask the Court to make good cause determinations on each, Aegis offered to substitute the full exhibits (which contain unrelated discovery responses, etc.) with versions containing only the cited pages, *i.e.*, ***the only information relevant to the adjudication of the underlying motions***. Life Spine rejected this compromise, instead accusing Aegis of attempting "to avoid having to admit to the Court that it wishes to have its own allegedly confidential information sealed--after demanding it be unsealed--without even attempting to meet the good cause standard that Aegis has stated Life Spine must meet." But the point of Aegis's motion to unseal is neither to burden Life Spine or the Court with redacting irrelevant information nor to seek to unseal information simply by virtue of its attachment to a motion. Instead, Aegis's position is and always has been that the law demands that the non-trade secret facts ***relevant to adjudicating a motion*** should be made available to the public (and the parties). As such, Aegis withdrew its original motion and brings this renewed motion to make clear the narrow issue to be resolved. Prior to filing this Motion, Aegis again asked Life Spine to reconsider its position, but Life Spine declined. *See* Ex. A.

and Life Spine's proposed redactions shows that it is only Aegis whose redactions meet this standard. *See generally* Ex. B. Aegis offers a set of narrow and targeted redactions of the sort of precise measurements and test results that Life Spine has alleged are trade secret. *Id.* at 7. Life Spine, by contrast, seeks to seal facts that were critical to Aegis' Motion and the Court's decision like Life Spine's obtaining and testing of its competitors' devices, redacting even the names of competitors and the relief Aegis sought in its Motion to Compel. *See id.* at 15. And Life Spine's latest proposed redactions continue to redact whole swaths of information when it is plain that any trade secret information could be redacted with more circumspect redactions. *E.g.* Ex. B at 6 (redacting photographs of competitor device that have no measurements, as well as CAD images that have no discernible measurements due to image quality); *id.* at 7 (redacting entire image of ProLift compared to competitor device instead of only the precise measurements). As a result, Life Spine seeks to maintain under seal the exact type of information that Life Spine has previously indicated is not confidential. *Compare* Ex. A at 7 (redacting images of competitor device) to Dkt. 29 at 63a (Complaint showing images of ProLift and AccelFix-XT).

Indeed, Life Spine goes so far as to redact a single word from a heading in Aegis' Motion to Compel, as though a verb is a trade secret. *See* Ex. B at 12 (redacting one word from heading I). Life Spine's overbroad redactions even extend to Life Spine's logo and closing salutations in a draft letter. *See* Ex. B at 48, 55. There is no good cause to maintain such information under seal. First, barring some confidentiality obligation to the competitor, which Life Spine has never alleged and expressly disavowed at the Seventh Circuit, the information is not trade secret or privileged. The law is unequivocal that Life Spine's bald assertion that this information is confidential or Life Spine's preference to keep it secret is not a basis for sealing. Second, these facts were central to the Court's denial of Aegis' motion to compel and subsequent motion for reconsideration. Sealing

that information leaves Aegis (beyond its outside counsel), and the public, unable to fully comprehend the basis of the Court's decision.

Aegis's briefs and the exhibits thereto contain very little information of the type Life Spine has alleged in this case to be trade secret: *i.e.*, precise dimensions, ProLift testing results, or specific pricing information. Those alleged secrets are easily redacted, which is the appropriate way to deal with secret information once it has become part of the public record. The only proffered basis for Life Spine's position has thus far been that any mention of third-party devices must be redacted from *Aegis's* submissions because Life Spine designated the underlying exhibits as confidential under the Protective Order. That unilateral designation is not an appropriate basis to seal information under controlling Seventh Circuit law, Local Rule 26.2, or the plain text of the protective order to withhold judicial information from the public, particularly when Life Spine aired these facts in Ms. Wolters' declaration and this Court has considered the documents containing these facts and made reference to them in its order. Dkt. 351 (referencing Life Spine's FDA submissions mentioning the third-party products). Unsurprisingly, Life Spine has never offered any legal authority to support its position. Aegis respectfully requests that its Motion to Compel (Dkt. No. 337), Motion for Reconsideration (Dkt. No. 359), and the cited portions of specific exhibits relevant to the Court's decisions as described above each be unsealed.

**Argument**

The fundamental flaw in Life Spine's position is that there is a difference between what a party may initially designate as confidential during discovery and what may be redacted from filings that are made to, and relied on by, the Court. "The public has a right to know what takes place in a case that is being litigated in court – a public institution." Dkt. 278 at 2 (citing *Bond v. Uteras*, 585 F.3d 1061, 1073-74 (7th Cir. 2009). This right is particularly strong when facts and

documents are the basis of Court's opinion. *E.g. Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002) ("'dispositive' documents in any litigation enter the public record notwithstanding any earlier agreement. How else are observers to know what the suit is about or assess the judges' disposition of it? . . .[V]ery few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed. In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence . . ."); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("We have insisted that litigation be conducted in public to the maximum extent consistent with respecting trade secrets, the identities of undercover agents, and other facts that should be held in confidence."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 2862859, at *2 (S.D. Ill. June 11, 2018) ("Although discovery is generally done in secret, that 'small subset of all discovery', which the parties submit to influence judicial opinion, is presumptively open to inspection.") (quoting *Baxter*, 297 F.3d at 547); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000) ("Calling a [document] confidential does not make it a trade secret, any more than calling an executive's salary confidential would require a judge to close proceedings if a dispute erupted about payment (or termination) . . . People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.") (citations omitted). Even where a document contains some sealable information, the proper approach is to redact only that information, leaving the remainder for public view. *See Methodist Hosps., Inc. v. Sullivan*, 91 F.3d 1026, 1032 (7th Cir. 1996) (reversing denial of motion to unseal so that redactions could be made and remainder of brief filed publicly).

Courts must make a determination of good cause and cannot seal more of the record than is protected by law. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) ("[The] issue is the judge's failure to make a determination, as the law requires, of good cause to seal any part of the record of a case. Instead of doing that he granted a virtual carte blanche to either party to seal whatever portions of the record the party wanted to seal. This delegation was improper.") (citations omitted). This Court has recognized and applied this standard previously when questions arose about which portions of the preliminary injunction hearing transcript could be redacted. *See* Dkt. 278 at 4 (denying Life Spine's request to redact portions of the transcript that "lack sufficient details to disclose any private or confidential image or information"); *see also Medcor, Inc. v. Garcia*, No. 21 CV 2164, 2022 WL 124163, at *1, n. 1 (N.D. Ill. Jan. 13, 2022) ("Any document previously filed under seal and referenced in this opinion should be unsealed . . . the parties shall file a joint statement identifying the docket entries for unsealing or stating a basis for continued secrecy, with a proposed deadline for filing public versions of documents redacting only trade-secret information."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 367 F. Supp. 3d 813, 816 (N.D. Ill. 2019) (requiring movant to file a revised brief "with redactions properly limited to trade secret information").

Here, there is no good cause to maintain the facts cited in and relevant to Aegis's Motion to Compel or Motion for Reconsideration under seal, apart from those few instances where the document contains the sort of specific information that Life Spine alleges to be trade secret. The mere fact that Life Spine has obtained competitors' devices is certainly neither confidential nor a trade secret. Nor is virtually any of the other information Life Spine insists on redacting. And Life Spine's preference that this information remain confidential is not enough for Life Spine to carry its burden of showing good cause. *See Union Oil Co.*, 220 F. 3d at 568 ("This is not the first

time we have encountered requests to seal proceedings in order to implement the parties' preference for seclusion. The requests have been uniformly rejected."); *Baxter*, 297 F. 3d at 547 (As we remarked in *Union Oil*, many litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed.").

During the conferral process, the sole basis Life Spine provided for its insistence that all mentions of the third-party devices Life Spine obtained and tested be redacted was that those facts are contained in documents Life Spine unilaterally designated confidential under the Protective Order when it produced them. In Life Spine's view, unless and until (a) Aegis challenges that confidentiality designation and (b) the Court agrees and orders the designation to be removed, then *any* information that is found in a document marked by Life Spine as "confidential" must be redacted from briefs filed with the Court. Again, that is not the law and Life Spine has never offered any authority to support its position. Indeed, it is contrary to the terms of the Protective Order, itself, which indicates "[t]his Order does not, by itself, authorize the filing of any document under seal." Dkt. 42 at ¶8.

The procedure under the Protective Order to challenge confidentiality designations made on documents that were produced in the litigation is separate and apart from the "good cause" that Life Spine must show to justify shielding information in court filings from the public. *See In re Bank One Sec. Litig.*, 222 F.R.D. 582, 587 (N.D. Ill. 2004) ("Defendant argues that Plaintiffs did not follow the provision of the December 12, 2001 protective order governing challenges to confidentiality . . . such an argument is 'immaterial to a determination of whether the information belongs in the public domain.'") (quoting *Solaia Tech. LLC v. Arvinmeritor, Inc.*, No. 02 C 4704, 2004 WL 549449, *2 (N.D. Ill. Jan. 28, 2004)). The cited and relied upon facts in the exhibits at

issue contain very little information which might rise to the level of "privileged information" or "trade secrets" that can properly be redacted from court filings. There is virtually no reference to the specific measurements, testing results, or pricing information that Life Spine has asserted are its trade secrets referenced in Aegis's motions. And, Aegis does not object to Life Spine continuing to maintain that information under seal by redacting it. *See*, *e.g.*, Ex. B (Aegis' agreed redactions in pink highlighting of ProLift measurements and test results. Rather, Aegis seeks only to unseal the portions of these and other documents that are not trade secret and relate to *third-party* cages – which is what was at issue in Aegis's motion to compel and subsequent motion for reconsideration. It would turn this case on its head to suggest, as Life Spine's position implies, that Life Spine's study of third party cages was somehow Life Spine's trade secret or that Life Spine's competitive position would suffer serious harm from the disclosure of this information. *See Baxter* 297 F.3d at 547 ("bald assertion[s] that confidentially promotes [a party's] business interest" is not sufficient to demonstrate good cause for sealing). Life Spine may prefer that the public not know about its possession or use of third-party devices, but that in and of itself does not make the information privileged or trade secret. *Union Oil Co.*, 220 F. 3d at 568. It does not come close to meeting the Seventh Circuit standard for good cause to redact, a fact tacitly acknowledged by Life Spine when it included specific mention of the Opticage and Rise devices in its own declaration from Ms. Wolters that Life Spine filed in the public docket (Dkt. 350-5) and did not try to keep its comparison to other devices out of the public eye at the preliminary injunction hearing. *See* Dkt. 280 at 184 (public transcript page 418 discussing Life Spine's comparison of ProLift to Globus Caliber device). As such, Life Spine has no colorable claim that the mere mention of these third-party devices should be redacted. For those small portions of these

documents that do meet the good cause standard set forth by the Seventh Circuit, those can readily be redacted leaving the remaining in view of the public.

**Conclusion**

For the reasons explained above, Aegis respectfully renews its Motion to unseal, and asks the Court to enter an order unsealing (1) Aegis's Motion to Compel (Dkt. 337) (the brief, itself); (2) Aegis's Motion for Reconsideration (Dkt. 359) (the brief, itself), (3) the cited portions of Exhibit E (Dkt. 337-5 at pages 17, 18, 19, 23, 24, 49, 50, 51, 79), and (4) Exhibits F (Dkt. 337-6), H (Dkt. 337-8), and L (Dkt. 337-12), apart from those few portions noted in pink highlights in Exhibit B where there is the sort of putative trade secret to satisfy the Seventh Circuit's clear standard. If there are any portions of the foregoing, other than those already highlighted in pink in Ex. B, where Life Spine can identify trade secret or privileged information that meets the legal standard, it should do so specifically with sufficient explanation in its Response. To date, Life Spine has not provided sufficient explanation for the material highlighted in light blue in Ex. B, and Aegis therefore asks for that information to be unsealed.

Dated: March 17, 2022

By: /s/ Jason G. Winchester

Jason G. Winchester (#6238377)
Rita J. Yoon (#6298019)
Christopher A. Hall (#6316715)
JONES DAY
77 W Wacker Dr., Suite 3500
Chicago, IL 60601
(312) 269-4373
jgwinchester@jonesday.com
ryoon@jonesday.com
chall@jonesday.com

Gregory A. Castanias*
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
gcastanias@jonesday.com

Stuart W. Yothers*
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
syothers@jonesday.com

Nicholas J. Bagnolo*
JONES DAY
901 Lakeside Ave E
Cleveland, OH 44114
(216) 586-7046
nbagnolo@jonesday.com

***Counsel for Aegis Spine, Inc.***
**Admitted pro hac vice*