IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LIFE SPINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-7092 |
| | ) | |
| v. | ) | Hon. Young B. Kim |
| | ) | |
| AEGIS SPINE, INC., | ) | **Jury Trial Demanded** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR RULE TO SHOW CAUSE WHY AEGIS, L&K, AND L&K SPINE, INC. SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THIS COURT'S ORDER**

Plaintiff Life Spine, Inc. ("Life Spine") respectfully submits this motion for rule to show cause why Defendant Aegis Spine, Inc. ("Aegis"), its parent company and business partner L&K Biomed Co., Ltd. ("L&K"), and a recently-created L&K subsidiary called "L&K Spine, Inc." should not be held in contempt for violating this Court's March 15, 2021 Preliminary Injunction Order. In support of this motion, Life Spine states as follows:

**BACKGROUND**

Life Spine's best-selling product is its ProLift Expandable Spacer System ("ProLift"). Dkt. 13-1, Decl. of J. Jesse ¶ 4. ProLift is an expandable cage designed and engineered for doctors to implant in patients' spines using one of two surgical approaches: the "transforaminal" lumbar interbody fusion approach ("TLIF") and the "posterior" lumbar interbody fusion approach ("PLIF"). Ex. 1, 1/9/2023 Declaration of Mariusz Knap ("Decl. of M. Knap") ¶ 5. For this reason, ProLift (and its direct competitors in the same product category) are commonly referred to as "TLIF/PLIF" expandable cages. *Id.* TLIF and PLIF are two types of spinal fusion procedures that utilize a posterior (back end) incision to insert an expandable cage between two vertebrae (replacing the intervertebral disc) and achieve fusion of the lumbar spine bones. *Id.* Life Spine

1

spent substantial sums and over three years designing, developing, and testing several versions of ProLift to determine the right combination of precisely engineered components that would achieve a strong, stable, and properly functioning TLIF/PLIF expandable cage. Dkt. 13-1, Decl. of J. Jesse ¶ 7.

Life Spine initiated this lawsuit in October 2019 after discovering Aegis and L&K at an industry convention marketing AccelFix-XT—a virtually identical knock-off of ProLift. Dkt. 13-1, Decl. of J. Jesse ¶¶ 22-24. Like ProLift, AccelFix-XT is an expandable cage designed for the TLIF/PLIF surgical approach. *Id.* ¶ 23. Aegis and L&K launched AccelFix-XT to compete directly with ProLift in the TLIF/PLIF market. After bringing suit, Life Spine filed a motion for preliminary injunction and the parties exchanged documents, conducted depositions, completed expert discovery, and submitted amended prehearing briefs. The Court held a preliminary injunction hearing over nine days in September, October, and November 2020.

On March 15, 2021, this Court entered a Memorandum Opinion and Order ("Opinion") granting Life Spine's amended motion for preliminary injunction and issued a Preliminary Injunction Order ("Order"). Dkts. 212, 213. In its Opinion, the Court found that Aegis and L&K worked together to use Life Spine's proprietary ProLift devices and confidential information to develop their substantially identical AccelFix-XT device in violation of numerous legal obligations. *See, e.g.,* Dkt. 212, Opinion at 40 (finding a "cascade of evidence" that AccelFix-XT was a "joint project between Aegis and L&K"). Accordingly, in its Preliminary Injunction Order, the Court instructed in relevant part:

> Aegis Spine, Inc.…and any business entities and/or persons in active concert or participation with Aegis are hereby enjoined until this case is resolved on the merits from…[d]eveloping, manufacturing, marketing, promoting, advertising, distributing, transferring, assigning, sharing, disclosing, selling, offering for sale, seeking hospital registration of, or submitting a response to a request for proposal for any items in the AccelFix-XT line of medical devices[.]

2

Dkt. 213, Order ¶ 1. The Court's Order in this regard was clear and unambiguous. Nonetheless, the Court reiterated the scope of its Order during the March 22, 2021 telephonic hearing. In response to a question from Aegis's counsel regarding whether the Order applies to L&K, the Court said "yes." Ex. 2, 3/22/2021 Hr'g Tr. at 10:25. The Court explained that "the evidence shows that you can't separate Aegis from L&K when it comes to AccelFix-XT" and that, under the Federal Rules, the Order applies to entities like L&K that act in "cooperat[ion] with Aegis to place AccelFix-XT out on the market." *Id.* at 11:1-10.

Further, in response to another question from Aegis's counsel related to the devices encompassed by the Order, the Court explained that the phrase "any items in the AccelFix-XT line of medical devices" was intended to be read in light of the Memorandum Opinion and Order and to ensure that any device that incorporates a trade secret or other information discussed at the hearing is covered. *See* Ex. 2, 3/22/2021 Hr'g Tr. at 7:18-8:16. The Court advised Aegis that if it had any doubt about whether a particular device was subject to the Order, it should confer with Life Spine so Life Spine would be on notice and there would be "no danger of being accused of trying to circumvent the preliminary injunction order." *Id.* at 8:9-15. Aegis's counsel assured the Court that Aegis would confer with Life Spine. *See id.* 8:18 (stating that Aegis would be "happy to have" a conversation with Life Spine about which products are covered).

Notwithstanding the Court's clear Order and explicit instructions, Life Spine has discovered that Aegis, L&K, and a recently-created L&K subsidiary called "L&K Spine, Inc." are violating the Order by developing, manufacturing, marketing, promoting, advertising, sharing, disclosing, selling, offering for sale, and seeking hospital registration of a TLIF/PLIF expandable cage in the AccelFix-XT line of medical devices. On December 12, 2022, Life Spine attended the Society of Military Orthopedic Surgeons ("SOMOS") annual meeting in Scottsdale, Arizona. Ex. 1, Decl. of M. Knap ¶ 6. There, Life Spine encountered Aegis and L&K personnel operating two booths in close proximity

under the corporate names "Aegis Spine" and "L&K Spine, Inc." *Id*. Both Aegis and L&K Spine, Inc. marketed the AccelFix line of expandable devices at their booths, and L&K Spine, Inc. featured an expandable cage that appeared to be from the AccelFix-XT line of medical devices. *Id*. For example, L&K Spine, Inc. displayed a large advertisement next to its booth promoting a device that appeared to be AccelFix-XT (or a substantially identical device designed for the same TLIF/PLIF surgical approach as AccelFix-XT and ProLift). *Id*. The advertisement directed attendees to L&K's corporate website:



4

Ex. 1, Decl. of M. Knap ¶ 6; Ex. 3, L&K Spine, Inc. Advertisement.

Comparing marketing photos of AccelFix-XT found on the internet with the photos of the device displayed on L&K Spine, Inc.'s advertisement reveals substantial similarities between the products, including—by all appearances—their components, design, function, and profile:

**AccelFix-XT[1]**  **Device Marketed at SOMOS**




Life Spine witnessed Aegis's CEO, Tony Ahn, walk over to the L&K Spine, Inc. booth and then back to the Aegis booth, and both the Aegis booth and the L&K Spine, Inc. booth displayed samples of expandable devices for attendees to observe. Ex. 1, Decl. of M. Knap ¶ 7. Despite its assurances to this Court, Aegis did not confer with Life Spine before Aegis and L&K Spine, Inc. displayed and marketed the AccelFix-XT look-alike device at the SOMOS annual meeting.

After the SOMOS annual meeting, Life Spine performed an internet search of "L&K Spine, Inc." to discover its affiliation with Aegis and L&K and to learn more about the device marketed at the meeting that appeared to be a TLIF/PLIF expandable cage from the AccelFix-XT line of medical devices. Life Spine found Korean-language articles discussing "L&K Spine, Inc." and had them translated into English. Ex. 4, Declaration of John Robinson ("Decl. of J. Robinson") ¶ 4. The translated articles suggest that L&K created "L&K Spine, Inc." in or around 2022 and transferred the

---

[1] See https://www.econovill.com/news/articleView.html?idxno=511372 (last visited January 9, 2023).

rights to distribute its medical devices in the United States from Aegis to "L&K Spine, Inc." For example, according to one article, L&K created "L&K Spine, Inc." because it was "looking for a new route [into the U.S. market]" following the Court's Preliminary Injunction Order and decided to establish one "through the transfer of the right to [do] business [from Aegis] to a new subsidiary." Ex. 5, 6/2/2022 NEWSIS Article.

Life Spine also discovered that the device depicted on the L&K Spine, Inc. advertisement is apparently being marketed as "PathLoc-TM." L&K's FDA 510(k) applications for "AccelFix" and "PathLoc" show that the two product lines have the same trade/device name: the "**AccelFix** Lumbar Interbody Fusion Cage System" and the "**PathLoc** Lumbar Interbody Fusion Cage System." *Compare* Ex. 6, 9/16/2019 FDA 510(k) Letter (AccelFix-XT) at 1 *with* Ex. 7, 3/9/2022 FDA 510(k) Letter (PathLoc-TM) at 1. Moreover, the FDA 510(k) letter for "PathLoc-TM" confirms that "PathLoc-TM"—like ProLift and AccelFix-XT—was designed for doctors to implant in patients' spines using the TLIF and PLIF surgical approaches:

> **Description of the Device**
> The PathLoc Lumbar Interbody Fusion Cage System implants are interbody fusion devices intended for use as an aid in spinal fixation. They are made of Titanium 6AL-4V Alloy (ASTM F136). These hollow, rectangular implants are offered in a variety of widths, lengths, heights and lordotic angles designed to adapt to a variety of patient anatomies. The implants can be expanded in height after insertion in the unexpanded state using the system instrumentation. The implants have serrations on the superior and inferior surfaces designed for fixation.
> - ==PathLoc - TM is to be implanted via transforaminal and posterior approach.==

Ex. 7, 3/9/2022 FDA 510(k) Letter (PathLoc-TM) at 5.

In addition to having the same name and being designed for the same surgical approaches, AccelFix-XT and "PathLoc-TM" have the same "Indications for Use" device descriptions—word for word—in their FDA 510(k) submissions:

> Indications for Use *(Describe)*
> **AccelFix** Lumbar Expandable Cage System is indicated for intervertebral body fusion procedures in skeletally mature patients with degenerative disc disease (DDD) at one or two contiguous levels from L2-S1. DDD is defined as discogenic back pain with degeneration of the disc confirmed by patient history and radiographic studies. These DDD patients may also have up to Grade 1 spondylolisthesis or retrolisthesis at the involved level(s). This device is to be used with autogenous bone graft and/or allogenous bone graft composed of cancellous and/or corticocancellous bone. AccelFix Lumbar Expandable Cage System is to be used with supplemental fixation. Patients should have at least six (6) months of non-operative treatment prior to treatment with an intervertebral cage.

> Indications for Use *(Describe)*
> **PathLoc** Lumbar Interbody Fusion Cage System is indicated for intervertebral body fusion procedures in skeletally mature patients with degenerative disc disease (DDD) at one or two contiguous levels from L2-S1. DDD is defined as discogenic back pain with degeneration of the disc confirmed by patient history and radiographic studies. These DDD patients may also have up to Grade 1 spondylolisthesis or retrolisthesis at the involved level(s). This device is to be used with autogenous bone graft and/or allogenous bone graft composed of cancellous and/or corticocancellous bone. PathLoc Lumbar Interbody Fusion Cage System is to be used with supplemental fixation. Patients should have at least six (6) months of non-operative treatment prior to treatment with an intervertebral cage.

*Compare* Ex. 6, 9/16/2019 FDA 510(k) Letter (AccelFix-XT) at 3 *with* Ex. 7, 3/9/2022 FDA 510(k) Letter (PathLoc-TM) at 3. AccelFix-XT and "PathLoc-TM" also are made from the same material, share the same device identification categories, identify the same L&K predicate devices,[2] and list the same performance bench tests in their submissions for 510(k) clearance. *Id.* at 4-5.

An L&K official is quoted in an article describing "PathLoc-TM" as a "follow-up" device that L&K launched to "replace[]" AccelFix-XT—after this Court enjoined its marketing and sale—so that L&K could re-enter the TLIF/PLIF market. Ex. 8, 7/20/2022 News Way Article at 4. L&K has apparently been selling PathLoc-TM to hospitals in the United States in direct competition with ProLift since March 2022—a year after this Court issued its Preliminary Injunction Order and Aegis and L&K were prohibited from selling "any items in the AccelFix-XT line of medical devices." *See id.* at 2-4.

In light of these discoveries, Life Spine is concerned that Aegis and L&K are flouting the Court's Preliminary Injunction Order by changing the name of their TLIF/PLIF ProLift knock-off from

---

[2] For AccelFix-XT, L&K listed ProLift as the "Primary Predicate Device." For "PathLoc-TM," however, L&K changed the "Primary Predicate Device" to the Globus RISE and did not mention ProLift. *Compare* Ex. 6, 9/16/2019 FDA 510(k) Letter (AccelFix-XT) at 4 *with* Ex. 7, 3/9/2022 FDA 510(k) Letter (PathLoc-TM) at 4.

"AccelFix-XT" to "PathLoc-TM" and moving distribution from "Aegis" to "L&K Spine, Inc." Life Spine's counsel shared Life Spine's concerns with Aegis's counsel and sought more information from Aegis, L&K, and L&K Spine, Inc. Ex. 9, 12/21/2022 D. Lombard Ltr. to J. Winchester. In response, Aegis's counsel refused to acknowledge L&K Spine, Inc.'s affiliation with Aegis and offered no explanation for PathLoc-TM or Aegis, L&K, or L&K Spine, Inc's conduct at the SOMOS annual meeting. Ex. 10, 12/22/2022 J. Winchester Email to D. Lombard. After Life Spine's counsel shared Life Spine's concerns with Aegis's counsel, Aegis's counsel moved to withdraw as Aegis's attorneys. Dkt. 483.

Accordingly, Life Spine brings this motion. Aegis and L&K cannot evade the Court's Preliminary Injunction Order by having L&K end its relationship with Aegis and begin distributing enjoined devices through a new subsidiary called "L&K Spine, Inc." Likewise, Aegis and L&K cannot nullify the Court's prohibition on marketing and selling any item in the AccelFix-XT line of medical devices by launching a substantially identical "follow-up" device, designed for the same TLIF/PLIF surgical approach, and calling it "PathLoc-TM." Aegis should be compelled to answer for itself and any L&K entities created to act in concert and participation with Aegis and L&K. Respectfully, the Court should grant this motion.

## ARGUMENT

### I. AEGIS, L&K, AND L&K SPINE, INC. ARE VIOLATING THE PRELIMINARY INJUNCTION ORDER

The evidence shows that "PathLoc-TM"—the AccelFix-XT look-alike device displayed and marketed by Aegis and L&K Spine, Inc. at the SOMOS annual meeting—is subject to the Court's Order, which broadly covers "any items in the AccelFix-XT line of medical devices." Dkt. 213, Order ¶ 1. AccelFix-XT and "PathLoc-TM" are both TLIF/PLIF expandable cages apparently comprised of the same five fundamental components—nose ramp, base ramp, top endplate, bottom endplate, and expansion screw—that are designed to look and operate in substantially the same

manner as ProLift. According to their FDA 510(k) submissions, the devices are both designed for the same indications for use, are made of the same material, and count the same L&K products as predicate devices. Both devices also appear to share the same dovetail-shaped rail and grooves mechanism as ProLift that helps the devices achieve maximum stability and controlled expansion—a critical objective discussed at length at the preliminary injunction hearing. There is no reason to suspect that "PathLoc-TM" is not essentially the same as AccelFix-XT—and therefore essentially the same as ProLift—only marketed under a different name in an effort to side-step the Court's Preliminary Injunction Order. Indeed, when given an opportunity to provide an alternative explanation, Aegis did not even attempt one. *See* Ex. 10, 12/22/2022 J. Winchester Email to D. Lombard.

The evidence thus supports a conclusion that the "PathLoc-TM" device marketed by Aegis and L&K Spine, Inc. at the SOMOS annual meeting is a "follow-up" product in the AccelFix-XT line of medical devices, and incorporates trade secrets and other information misappropriated from Life Spine's ProLift that are addressed in the Court's Memorandum Opinion and Order and were discussed during the preliminary injunction hearing. Accordingly, Aegis and L&K Spine, Inc. are violating the Court's Preliminary Injunction Order, at a minimum, by working in active concert and participation to develop, manufacture, market, promote, advertise, share, and disclose "PathLoc-TM," including at the SOMOS annual meeting.

Moreover, while only "Aegis Spine" and "L&K Spine, Inc." purported to attend and operate booths at the SOMOS annual meeting in violation of the Court's Order, it is apparent that L&K is violating the Court's Order as well. According to statements made by L&K executives in Korean-language articles, L&K created L&K Spine, Inc. as a subsidiary to take over U.S. distribution of L&K's expandable cages from Aegis after the Court issued its Preliminary Injunction Order. L&K has apparently been selling and distributing PathLoc-TM through L&K

9

Spine, Inc. since March 2022. If, as it appears, L&K is playing a corporate shell game in an effort to circumvent the Court's Order by selling essentially the same enjoined AccelFix-XT device through a new subsidiary, L&K should be held to account.

## II. THE COURT SHOULD ISSUE AN ORDER INSTRUCTING AEGIS, L&K, AND L&K SPINE, INC. TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT

The Court has inherent power to enforce its orders through civil contempt. *See, e.g.*, *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). The Seventh Circuit requires a party seeking a finding of contempt to "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

Each of these elements is met here. The Court's Preliminary Injunction Order states plainly that "Aegis Spine, Inc." and "any business entities and/or persons in active concert or participation with Aegis" are prohibited from "[d]eveloping, manufacturing, marketing, promoting, advertising, distributing, transferring, assigning, sharing, disclosing, selling, offering for sale, seeking hospital registration of, or submitting a response to a request for proposal for any items in the AccelFix-XT line of medical devices[.]" Dkt. 213, Order ¶ 1. The Court confirmed for Aegis that this command applies to "L&K" and entities like L&K that act in "cooperat[ion] with Aegis to place AccelFix-XT out on the market." Ex. 2, 3/22/2021 Hr'g Tr. at 10:25-11:10. The Court also explained to Aegis that the phrase "any items in the AccelFix-XT line of medical devices" was intended to be read broadly in light of the Memorandum Opinion and Order and instructed Aegis to confer with Life Spine about whether particular products are covered to avoid being accused of trying to circumvent the preliminary injunction order. *See* Ex. 2, 3/22/2021 Hr'g Tr. at 7:18-8:16.

Nonetheless, Aegis, L&K, and "L&K Spine, Inc." are violating the Court's commands by, at a minimum, developing, manufacturing, marketing, promoting, advertising, sharing, disclosing, selling, and offering for sale the "PathLoc-TM" expandable cage—a device that appears to be substantially the same as AccelFix-XT and was designed for the same TLIF/PLIF surgical approach to compete directly with ProLift—while failing to consult with Life Spine and refusing to respond substantively to Life Spine's inquiry. These violations are significant as they show that Aegis and L&K are going to great lengths to defy a core component of the Court's Order: a command that Aegis and L&K keep any ProLift look-alikes that were designed to compete directly with ProLift in the TLIF/PLIF marketplace off the market pending the resolution of this matter. These violations also demonstrate that Aegis and L&K are not making a reasonable and diligent effort to comply with the Court's Order and are, instead, committed to using any means necessary—including creating a new subsidiary ("L&K Spine, Inc.") and rebranding their TLIF/PLIF product ("PathLoc-TM")—to try to evade the Order and continue operating in the TLIF/PLIF market with a knock-off derived from ProLift.

Accordingly, the Court should issue an order granting the following relief:

- Holding Aegis, L&K, and L&K Spine, Inc. in contempt of Court for violating the Court's Preliminary Injunction Order;

- Ordering Aegis, L&K, and L&K Spine, Inc., and all others working in active concert or participation with Aegis, to immediately cease and desist from taking further steps to develop, manufacture, market, promote, advertise, distribute, transfer, assign, share, disclose, sell, offer for sale, seek hospital registration of, or submit a response to a request for proposal for any items in the AccelFix-XT line of medical devices, including the TLIF/PLIF expandable cage referred to as "PathLoc-TM" displayed and marketed by Aegis and L&K Spine, Inc. at the SOMOS annual meeting;

- Ordering Aegis, L&K, and L&K Spine, Inc. to submit a sworn accounting to this Court showing the amount of net profits that Aegis, L&K, L&K Spine, Inc., or any others working in active concert or participation with Aegis, have made to date by selling "PathLoc-TM" and disgorge said amount in a payment to Life Spine; and

- Ordering Aegis, L&K, and L&K Spine, Inc., and all others working in active concert or participation with Aegis, jointly and severally, to reimburse Life Spine for the cost of bringing and pursuing the resolution of this motion.

Moreover, if the Court deems it necessary and appropriate, the Court should order Aegis, L&K, and L&K Spine, Inc. to produce discovery regarding "PathLoc-TM" including, at a minimum, the design history file and any engineering drawings for "PathLoc-TM" that would allow Life Spine and the Court to assess "PathLoc-TM" in comparison with AccelFix-XT.

This relief is appropriate to compel compliance with this Court's Order and to compensate Life Spine for the harm caused by the breaches thereof.

## **CONCLUSION**

For the foregoing reasons, Life Spine respectfully asks that the Court grant the relief requested herein.

Dated:  January 10, 2023 Respectfully Submitted,

*/s/ Daniel R. Lombard*
Jonathan C. Bunge
Daniel R. Lombard
John M. Robinson
Raphael J. Ginsburg
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606-1881
(312) 705-7400
jonathanbunge@quinnemanuel.com
daniellombard@quinnemanuel.com
johnrobinson@quinnemanuel.com
raphaelginsburg@quinnemanuel.com

*Counsel for Life Spine, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that, on January 10, 2023, the foregoing was electronically filed with the Court by using the Northern District of Illinois' CM/ECF filing system, which provided notice of the filing to all CM/ECF participants.

I further certify that physical copies of the foregoing were delivered to L&K and L&K Spine, Inc. via FedEx.

/s/ *Daniel R. Lombard*
Daniel R. Lombard