UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., | ) |
| | ) No. 19 CV 7092 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| AEGIS SPINE, INC., | ) |
| | ) June 12, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff Life Spine, Inc. ("Life Spine") alleges in this diversity action that Defendant Aegis Spine, Inc. ("Aegis") stole confidential information and breached contractual obligations to develop and market the AccelFix-XT ("XT"), a medical device that directly competes with Life Spine's "flagship device," ProLift Expandable Spacer System ("ProLift"). In March 2021, the court entered a preliminary injunction enjoining Aegis from developing, manufacturing, marketing, distributing, or selling the XT pending the outcome of a trial. At the same time, the court ordered Life Spine to post a $6 million bond to protect Aegis from losses sustained in the event the injunction later was deemed erroneous. Before the court is Life Spine's motion to eliminate or reduce the bond. For the following reasons, the motion is granted in part and denied in part:

**Background**[1]

The parties are both medical-device companies that develop and market "expandable cage" spinal implants, among other products. (R. 494, Mem. Op. and Order at 2.) Aegis is a subsidiary of L&K Biomed Co., Ltd. ("L&K"), a South Korea-based medical device company, and several current and former high-ranking Aegis employees have worked for L&K. (Id.) Aegis distributes and sells expandable cage products, including of relevance here and beginning in September 2019 the XT. (Id.) The XT is manufactured by L&K, but Aegis claims intellectual property rights in it. (Id.) Aegis also distributes other L&K expandable cages, including the AccelFix-XL and AccelFix-XTP. (Id.)

Life Spine moved for a preliminary injunction in August 2020, alleging that Aegis used its access to Life Spine's confidential and trade secret information to develop and market the XT. (R. 117, Pl.'s Amended Prelim. Inj. Mot., Ex. 1.) Thereafter, the court held a hearing, after which it granted Life Spine's request for a preliminary injunction in March 2021, barring Aegis from distributing and selling the XT. (R. 212, Mem. Op. and Order at 2.) The court concurrently ordered Life Spine to post a $6 million bond to cover Aegis's losses if the injunction were determined to have been entered in error. (Id. at 64-65.) Life Spine did not object to or move the court to reconsider that ruling.

---

[1] The court issued a memorandum opinion and order addressing the parties' cross motions for partial summary judgment, which sets forth in greater detail the facts of this case. (R. 494, Mem. Op. and Order.)

In February 2022 Aegis sought to increase the injunction bond from $6 million to $10 million, (R. 372, Def.'s Mot. to Increase Bond Amount), but the court denied the motion because Aegis failed to offer evidence supporting the higher bond amount, (R. 393). When opposing Aegis's motion, Life Spine attempted to make a "cross-motion" to lower the bond amount. (R. 383, Pl.'s Resp. to Increase Bond Amount at 11-12.) But the court declined to consider Life Spine's request because it was not raised in its own motion. (R. 393.)

## Analysis

Life Spine now moves[2] to eliminate or reduce the $6 million injunction bond the court required in March 2021, arguing that: (1) Aegis contractually waived the need for Life Spine to post bond; (2) Life Spine has "demonstrated a strong likelihood of success" on the merits; and (3) Life Spine is experiencing "severe hardship" by having "$6 million of its cash . . . tied up in the injunction bond." (R. 488, Pl.'s Mot. at 8-13.) Aegis opposes the motion. (R. 515, Def.'s Opp.)

Under Federal Rule of Civil Procedure 65(c), the court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). The court has significant discretion in setting the amount of the injunction bond and may "increase or decrease the amount [of the bond] as necessary to comport with its findings, or to account for

---

[2] Because the current motion and evidence in support thereof are filed under seal, the court includes only the information necessary to explain its ruling.

3

changed circumstances." *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141-42 (7th Cir. 1994). "Normally an injunction bond or equivalent security is essential" because a party "injured by an erroneous preliminary injunction is entitled to be made whole." *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011); *see also Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002) ("The purpose of an injunction bond is to compensate the defendant, in the event [it] prevails on the merits.").

When determining the bond amount, courts must "err on the high side," ensuring "the scope of the injunction is directly related to the amount of the security required." *Auto Driveway Franchise Sys., LLC v. Auto Driveway Richmond, LLC*, 928 F.3d 670, 679 (7th Cir. 2019). "[A]n error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010). The Seventh Circuit has recognized a narrow exception to this rule, however, where "the bond is both higher than necessary and beyond the plaintiff's financial capacity, and thus inflicts irreparable harm without justification." *Id.* "The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015).

**A.   Contractual Waiver**

Life Spine argues that the parties contractually agreed that "each party is entitled to injunctive relief to enforce [the Distribution and Billing Agreement

4

("DBA")] without the need to post bond" and, as such, Life Spine "need not post bond as a matter of law."  (R. 488, Pl.'s Mot. at 8, Ex. A, DBA § 7(d).)  As Life Spine acknowledges, however, the court has already considered and rejected this argument, having determined that this provision applies only to a narrow aspect of the DBA that is not relevant here.  (See R. 212, Mem. Op. and Order at 64 ("The parties may have agreed that injunctive relief without a bond is the appropriate remedy to any breach of Section 7 of the DBA, but that agreement does not extend to Life Spine's remaining claims underlying the requested injunction.").)  Life Spine did not move to reconsider the court's prior ruling, and its attempt to do so now is untimely.

**B.** **Likelihood of Success**

Life Spine asserts that the injunction bond should be eliminated or reduced because it has shown "a strong likelihood of success on the merits."  (R. 488, Pl.'s Mot. at 10 (quoting *Dent Drs., Inc. v. Dent Clinic, Inc.*, No. 14 CV 1112, 2015 WL 150430, at *1 (E.D. Wis. Jan. 12, 2015)).)  But Life Spine did not challenge Aegis's request for a $6 million injunction bond when the court made its decision setting the bond amount, (R. 488, Pl.'s Mot. at 4), even though the court granted Life Spine's request for a preliminary injunction in part based on a finding of likelihood of success.  Thus, Life Spine's request in this regard is also untimely.  In any event, while Life Spine has demonstrated a likelihood of success, equity nevertheless requires sufficient security to ensure Aegis is made whole if it prevails in this case at trial.  *See Roche Diagnostics Corp.*, 646 F.3d at 428.

## C. Financial Hardship

Finally, Life Spine contends that the $6 million bond amount exceeds its ability to pay and is causing it "severe hardship." (R. 488, Pl.'s Mot. at 13.) Life Spine submitted evidence to support these allegations.[3] (See, e.g., id. Ex. J.) Life Spine also proffered evidence showing that damages Aegis may have sustained from the injunction are in fact lower than Aegis's previous estimate. (Id. at 6-7, Exs. D, F, H & I.) Aegis does not submit any evidence to controvert the financial records Life Spine submitted to the court, which include loss-profit calculations from Aegis's own damages expert. (See id. Ex. I.) Together, this evidence establishes that "the bond is both higher than necessary and beyond the plaintiff's financial capacity, and thus inflicts irreparable harm without justification." *Habitat Educ. Ctr.*, 607 F.3d at 456.

The court therefore exercises its discretion and reduces the injunction bond to comport with the evidence. *Gateway E. Ry. Co.*, 35 F.3d at 1141-42. Although Life Spine suggests that a $2 million-bond is sufficient, (R. 488, Pl.'s Mot. at 6-7, 15-17), the court prefers to err on the high side, as instructed by the Seventh Circuit. *See Auto Driveway Franchise Sys.*, 928 F.3d at 679. As recently as March 2022, Life Spine urged the court to reduce the bond amount to $3 million to cover Aegis's "theoretical

---

[3] Life Spine suggests that it is considering "do[ing] without the benefit of the injunction it has proved it is entitled to" because of the hardship imposed by the $6 million bond. (R. 488, Pl.'s Mot. at 15.) The court cautions Life Spine that even if it chooses to withdraw the injunction the court may not dissolve the bond because the injunction has been in effect for more than two years, and Aegis must be made whole if it prevails at trial and can demonstrate financial harm because of the injunction. Life Spine chose to seek a preliminary injunction over Aegis's objection. As such, it must bear the consequences of having enjoyed the fruits of the injunction in place.

6

losses" for a two-year period. (See R. 383, Pl.'s Resp. to Increase Bond Amount at 3-5, 11.) By the time a trial takes place in this matter in January 2024, (R. 542), the injunction will have been in place for almost three years. Accordingly, the court concludes that a bond in the amount of $4 million is necessary and sufficient to protect Aegis against any erroneous losses stemming from the entry of the preliminary injunction.

## Conclusion

For the foregoing reasons, Life Spine's motion is granted in part and denied in part. The injunction bond is reduced from $6 million to $4 million.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**