UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIFE SPINE, INC., | ) | |
| | ) | No. 19 CV 7092 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AEGIS SPINE, INC., | ) | |
| | ) | June 14, 2023 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Life Spine, Inc. ("Life Spine") alleges in this diversity action that Defendant Aegis Spine, Inc. ("Aegis") stole confidential information and breached contractual obligations to develop and market the AccelFix-XT ("XT"), a medical device that directly competes with Life Spine's "flagship device," ProLift Expandable Spacer System ("ProLift"). Before the court is Life Spine's motion for rule to show cause why Aegis and non-parties L&K Biomed Co., Ltd. ("L&K"), Aegis's South Korea-based parent company, and L&K Spine, Inc. ("L&K Spine"), a recently formed L&K subsidiary, should not be held in contempt for violating the court's March 15, 2021 preliminary injunction order ("PI Order"). For the following reasons, the motion is denied:

**Background**[1]

This is an action between two medical device companies that develop and market "expandable cage" spinal implants. Aegis sold and distributed ProLift beginning in January 2018 pursuant to an agreement between the parties. But Life Spine says Aegis engaged in duplicitous conduct to steal its confidential information and gain a competitive edge in designing and developing XT, a similar device manufactured by L&K, and in which Aegis claims intellectual property rights. In September 2019 Aegis began distributing and selling XT instead of ProLift. A month later, Life Spine filed this lawsuit and moved to enjoin Aegis from marketing and selling XT. The court granted Life Spine's preliminary injunction motion in March 2021 and entered the following order:

> Aegis Spine, Inc. . . . and any business entities and/or persons in active concert or participation with Aegis are hereby enjoined until this case is resolved on the merits from . . . [d]eveloping, manufacturing, marketing, promoting, advertising, distributing, transferring, assigning, sharing, disclosing, selling, offering for sale, seeking hospital registration of, or submitting a response to a request for proposal for any items in the [XT] line of medical devices[.]

(R. 213, PI Order ¶ 1.)

In October 2021 Life Spine filed a motion for rule to show cause why Aegis and L&K should not be held in contempt for violating another aspect of the injunction order prohibiting the "seeking or obtaining" of patents by continuing to prosecute four patent applications related to the XT technology. (Id. ¶ 5; R. 322.) This court denied

---

[1] The court issued a memorandum opinion and order addressing the parties' cross motions for partial summary judgment, which sets forth in greater detail the facts of this case. (R. 494, Mem. Op. and Order.)

2

that motion in January 2022, reasoning that there was not clear and convincing evidence that this proscription was an "unambiguous command" as to the subject patent applications, each of which was filed more than a year before the entry of the PI Order. (See generally R. 358.)

In the instant motion Life Spine argues that Aegis, L&K, and L&K Spine each should be held in contempt for acting together to market and sell the XT in the United States under a new name in violation of the PI Order. But as with the first such motion, the court is not persuaded.

## Analysis

The power to hold a party in civil contempt stems from the court's "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Civil contempt is a "severe remedy" that "should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (emphasis in original). As such, the Seventh Circuit requires the party seeking a finding of contempt to "establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

Life Spine contends that Aegis, L&K, and L&K Spine each should be held in contempt because they acted in concert to develop, market, and sell the PathLoc-TM ("PathLoc")—an alternative device to XT that Life Spine says is "essentially the same"—to circumvent the PI Order and rejoin the United States' spinal implant market. For support, Life Spine submits, among other things, Senior Vice President of Marketing Mariusz Knap's declaration that: (1) he attended the December 2022 Society of Miliary Orthopedic Surgeons ("SOMOS") annual meeting on behalf of Life Spine, at which representatives from Aegis and L&K Spine were also present; (2) he witnessed those representatives conferring during the conference; (3) Aegis and L&K Spine hosted exhibit booths near each other at the conference, both of which marketed the AccelFix line of expandable cage devices; and (4) L&K Spine's booth featured an "expandable cage that appeared to be from the [XT] line"—which Life Spine later discovered was PathLoc. (See generally R. 486, Pl.'s Mem. Ex. 1.) Life Spine also submits two Korean-language news articles suggesting that L&K created L&K Spine and PathLoc to bypass the PI Order and continue to sell XT in the United States using "a new route." (Id. at 5-7, Exs. 5, 8.)

Aegis counters that Life Spine cannot meet the standard for seeking a contempt finding, and in turn submits a declaration from Aegis CEO Youngbo Ahn and hearing transcripts, which it says make clear that this court cannot hold it, L&K, or L&K Spine in contempt. (R. 533, Def.'s Resp. Exs. 1-3.) The court agrees with Aegis that Life Spine's motion fails.

First, there is little evidence that Aegis has done anything—directly or indirectly—to run afoul of the PI Order, let alone that would satisfy the clear and convincing evidence standard required to support a contempt finding. To be sure, other than intimating that Aegis attended and displayed products at the same 2022 SOMOS conference that Life Spine attended and that representatives from Aegis and L&K were seen speaking to one another, Life Spine has submitted nothing to justify a contempt finding. As Life Spine appears to concede, it was L&K Spine, not Aegis, that displayed PathLoc at the SOMOS conference, and L&K/L&K Spine, not Aegis, that is marketing and selling the device. (Id.) Moreover, Aegis CEO Ahn attests that: Aegis displayed exemplars of the XL and XTP and a marketing video about another product at its conference booth, but nothing concerning XT or any other device; Aegis's and L&K Spine's booths were approximately 30 booths from each other; and the observed interaction between L&K Spine and himself consisted of "general greetings" unrelated to business. (Id. Ex. 1 ¶¶ 16-18, 22, 25.)

Second, the court lacks personal jurisdiction over L&K and L&K Spine and cannot hold either entity in contempt based on the circumstances presented here. Generally, an injunction binds only: (1) the parties; (2) the parties' officers, agents, employees, and attorneys; and (3) others said to be "in active concert or participation" with those entities or persons. Fed. R. Civ. P. 65(d)(2). Neither L&K nor L&K Spine are parties to this action, despite Life Spine's earlier representation that it planned to join L&K as a defendant. (See, e.g., R. 533, Def.'s Resp. Ex. 3 at 12.) As such, Life Spine's motion rests on the premise that L&K and/or L&K Spine are "in active concert

5

or participation" with Aegis concerning PathLoc. But aside from the fact that they are both L&K subsidiaries, there is virtually nothing to tie Aegis to L&K Spine, and nothing to tie it to PathLoc. Aegis's CEO Ahn declares that: Aegis and L&K Spine were just two of the more than fifty exhibitors at the 2022 SOMOS conference; Aegis and L&K Spine are separate companies that do not share officers or employees, hold ownership interest in one another, or market or sell products for one another; no one at Aegis participated in or assisted L&K Spine with the display, discussion, marketing, offering for sale, or sale of any products displayed at its booth; and Aegis did not have "any role in the design or development" of, market, offer to sell, or secure FDA authorization for PathLoc. (R. 533, Ex. 1 ¶¶ 4-9, 14, 16, 19, 23-25, 27, 37, 39, 44.) Life Spine offers no contradictory evidence. Thus, whatever L&K's role in PathLoc, there is no evidence that Aegis is or was part of it.[2]

Finally, even if there were sufficient evidence to show that Aegis acted in concert with L&K and/or L&K Spine with respect to the design, development, marketing, or sale of PathLoc, there is not clear and convincing evidence that PathLoc is "essentially the same" as XT. (R. 486, Pl.'s Mem. at 9.) Among other things, Life

---

[2] Notably, Life Spine suggests that this court has already determined that L&K is bound by the PI Order through its involvement with Aegis, and that at the very least Aegis must do what it can to limit any wrongdoing by L&K with respect to PathLoc. (R. 486, Pl.'s Mem. at 10-11; R. 534, Pl.'s Reply at 5-6.) The court disagrees. The court's comments were limited to L&K and Aegis's respective obligations and concerted activity concerning XT. (See R. 533, Def.'s Resp. Ex. 2 at 10-11 (March 22, 2021 hearing indicating that "you can't separate Aegis from L&K when it comes to [XT]" and "Aegis has to do what it can to stop L&K" from marketing XT while PI Order is in place).) As discussed, there is no evidence of any similar concerted activity concerning PathLoc. That said, Life Spine is not barred from pursuing actions against L&K and L&K Spine in the United States or South Korea.

Spine points out that PathLoc and XT were designed for the same surgical approach, have similar trade names, provided the same "Indications for Use" device descriptions in their respective FDA submissions, are comprised of the same five fundamental components, and appear similar in marketing materials. (Id. at 5-10.) But the court has already made clear that it is trade secret information (e.g., "the precise dimensions of . . . components and subcomponents and how those specifications impact their connectivity")—not the publicly disclosed information Life Spine highlights—that is subject to the PI Order. (R. 212, Mem. Op. and Order at 47; see also R. 533, Def.'s Resp. Ex. 2 at 7-9.) With no evidence regarding the same, Life Spine's motion fails on this ground too.

## Conclusion

For the foregoing reasons, Life Spine's motion for a rule to show cause is denied.

                              **ENTER:**

                              _____
                              **Young B. Kim**
                              **United States Magistrate Judge**