UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LIFE SPINE, INC., | ) | |
| | ) | No. 19 CV 7092 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AEGIS SPINE, INC., | ) | |
| | ) | November 16, 2023 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the court are Plaintiff Life Spine, Inc.'s ("Life Spine") and Defendant Aegis Spine, Inc.'s ("Aegis") motions *in limine* No. 1. For the following reasons, Life Spine's motion is granted in part and denied in part, and Aegis's motion is denied:

**Background**

This is an action between two medical device companies that develop and market "expandable cage" spinal implants. (R. 494, Mem. Op. and Order at 2.) Life Spine alleges that Aegis stole confidential information and breached contractual obligations in order to develop AccelFix-XT ("AccelFix"), a medical device that directly competes with Life Spine's ProLift Expandable Spacer System ("ProLift"). In defense, Aegis argues that ProLift is not innovative and does not contain trade secrets, and, in any event, Aegis's parent company, L&K Biomed Co., Ltd. ("L&K"), independently developed AccelFix.

The parties have filed various motions *in limine* in preparation for the January 16, 2024 jury trial in this case. (R. 542.) This order addresses each party's motion *in limine* No. 1. (R. 554; R. 568.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Through such motions, the court performs a "gatekeeping function . . . to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

## Analysis

### A.   Aegis's Motion No. 1

The motion is denied.  Aegis seeks to bar Life Spine from arguing or introducing evidence relating to an April 2019 recall of the spinal implant device "Opticage."  (R. 554, Def.'s Mot. No. 1 at 1.)  Aegis argues that certain evidence regarding this third-party device is relevant to demonstrate that: (1) Opticage "contains design elements" that appear in ProLift, undercutting Life Spine's contention that ProLift was "innovative or constitute[d] trade secrets"; and (2) its parent company, L&K, "independently developed the AccelFix products," as evidenced by the fact that U.S. Patent No. 8,105,382 ("the '382 Patent"), which discloses Opticage's design and components, appears in the AccelFix design history file. (Id.)

Aegis draws a distinction, however, between the relevance of Opticage itself and the FDA's April 2019 recall of Opticage devices.  Aegis asserts the latter is not relevant here, and any attempt by Life Spine to bring the jury's attention to the recall will only distract from the central issues in the case.  (Id. at 2.)  Aegis further contends that "reference to the Opticage recall will naturally result in a trial within the trial," resulting in judicial inefficiency and possible juror confusion.  (Id.)  Finally, Aegis represents that the timing of the AccelFix 510(k) FDA filing in March 2019 shows the irrelevance of the April 2019 Opticage recall because any misappropriation by Aegis would have had to occur before the AccelFix FDA submission.  (Id. at 3.)

3

Life Spine responds that Aegis cannot have it both ways—it cannot seek to keep in certain information about Opticage while excluding other probative evidence about the same device. (R. 583, Def.'s Resp. at 1.) Life Spine represents that Aegis's expert Brad Culbert is a named inventor of Opticage, who "is expected to testify extensively" about the Opticage device and prohibiting Life Spine from "put[ting] Aegis's arguments and [] Culbert's testimony in context" by pointing out that Opticage "was recalled not once but twice," would prejudice Life Spine. (Id.)

Life Spine explains that such recalls show "how difficult it is to develop an expandable spinal implant," undermining Aegis's claims that it developed AccelFix products "quickly and independently" in less than a year, whereas Culbert testified it took nearly six years to develop Opticage—and the device "was permanently taken off the market in the wake of recalls." (Id. at 2.) Life Spine argues it should be allowed to present this context to the jury to counter Aegis's independent development claim. (Id. at 3.)

Life Spine also argues the Opticage recalls are relevant to testing the credibility of Aegis's witnesses who assert that because the AccelFix design history file refers to the '382 Patent, the jury may infer that L&K independently developed AccelFix. (Id.) But because Opticage was previously recalled in 2016, and then again in 2019, Life Spine argues the jury should be provided insight regarding Aegis's claims that it developed its own products by drawing on a device that failed twice. (Id.) Life Spine further contends that the Opticage recalls support its claim that ProLift is innovative because it "has been on the market for years," while Opticage

4

was taken off the market after two recalls. (Id. at 4.) Finally, Life Spine points out the Opticage recalls "put into context" Culbert's expertise "as the developer of an early expandable spinal cage," and that the jury would be misled if Culbert were painted as an innovator without "the full picture." (Id.)

The court agrees with Life Spine. If Aegis wants to introduce evidence about Opticage to show how it independently developed AccelFix products, then it cannot pick and choose which evidence about Opticage may be offered at trial. The jury may weigh Culbert's or any other Aegis witness's credibility when assessing such evidence, making the recalls an appropriate topic on cross examination. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988). While the court does not intend to conduct a "trial within the trial" regarding the Opticage recalls, (R. 554, Def.'s Mot. No. 1 at 2), Aegis has not shown that evidence regarding the Opticage recalls is inadmissible for any purpose, s*ee Townsend*, 287 F. Supp. 2d at 872. By contrast, Life Spine has demonstrated the relevance of such evidence. For these reasons, if Aegis offers information about Opticage, the good, the bad, and the ugly pertaining to Opticage are fair game at trial.

**B.     Life Spine's Motion No. 1**

The motion is granted in part and denied in part. The court denies the motion to the extent that it cannot render evidentiary findings for each piece of evidence arguably related to its summary judgment ruling without being informed of the context, foundation, and relevance for which it may be offered. *See Anglin*, 139 F. Supp. 2d at 917. Life Spine seeks to bar Aegis from arguing or introducing evidence

5

that: (1) the parties' Distribution and Billing Agreement ("DBA") is invalid, ambiguous, or unenforceable; (2) Life Spine did not satisfy the terms of the DBA; and (3) the court's summary judgment motion ruling should be revisited. (R. 568, Pl.'s Mot. No. 1.) Life Spine argues that Aegis should be barred "from rehashing issues resolved on summary judgment through the introduction of exhibits and/or live testimony." (Id. at 1 (quoting *Gen. Citrus Int'l Inc. v. Remien*, No. 04 CV 6402, 2009 WL 2486164, at *2-4 (N.D. Ill. Aug. 10, 2009).) Aegis opposes the motion in part, countering that Life Spine seeks to exclude argument or evidence that "go[es] well beyond" the court's prior rulings. (R. 579, Def.'s Resp. at 1.) Notwithstanding this objection, Aegis indicates it does not intend to relitigate summary judgment issues at trial, and it will agree to an order excluding matters decided by the court on summary judgment, so long as they "have an adequate basis" in the court's summary judgment ruling. (Id.) Aegis includes in its opposition a draft order setting forth the evidence it agrees it cannot submit at trial. (Id. at 9-10.)

At the same time, Aegis carves out matters it argues the court did not resolve in its summary judgment ruling. First, Aegis contends the ruling does not preclude it from arguing or presenting evidence showing that Section 8(b)(iii) of the DBA is invalid because it unreasonably restrains trade. (Id. at 2, 9.) For its part, Life Spine concedes the court "reserved ruling on whether a particular portion of Section 8 of the DBA is enforceable" but asserts Aegis cannot argue that Section 8(b)(iii)'s "reference to 'copying' is unenforceable" given the court's ruling. (R. 568, Pl.'s Mot. No. 1 at 3 (citing R. 494, Mem. Op. and Order at 43-45) (highlighting "potential overbreadth in

6

Section 8(b)(iii)—that is, to the extent it prohibits Aegis from 'copy[ing] the design, knowledge, functionality or otherwise of [any product Life Spine ever distributes or sells] in any way'").)

With respect to ambiguity, while Aegis acknowledges the court's findings that certain terms in the DBA are ambiguous, Aegis wants to preserve its ability to: (1) challenge the propriety of any particular thing or document alleged to be "Confidential Information"; (2) contest Life Spine's attempt to include publicly available information in the definition of "Confidential Information"; (3) identify the ambiguity of certain terms in Sections 3(a) 7(a), 7(b), and 12(b); and (4) argue or present evidence regarding "the plain language of Section 7(b)," or "otherwise defend against any other alleged breaches" of this section. (R. 579, Def.'s Resp. at 2-3, 9.) And in terms of enforceability, Aegis concedes it cannot argue the DBA as a whole is unenforceable but asserts the court has not found each provision enforceable, leaving the door open for Aegis to submit evidence regarding the enforceability of provisions such as Sections 7(a), 8(b), and 15(h). (Id. at 5-6, 10.)[1]

Aegis also disputes Life Spine's "[a]ncillary [r]equests" to exclude any argument or evidence that contradicts the court's other summary judgment findings. (Id. at 6-9 (citing R. 568, Pl.'s Mot. No. 1 at 7-8).) Aegis acknowledges the court's summary judgment ruling regarding breach of fiduciary duty under Section 3(a) and

---

[1] Aegis does not oppose an order precluding it from arguing Life Spine cannot bring a breach of contract claim based on non-performance, but Aegis does contest "Life Spine's performance under the contract." (R. 579, Def.'s Resp. at 3-5, 10.) Aegis argues this evidence is relevant to damages and lack of fraudulent intent. (Id.)

7

breach of Section 7(a) by "using the transfer price listed in the DBA for its own business purposes." (Id. at 6-10 (citing R. 494, Mem. Op. and Order at 37).) But again here, Aegis argues the court's ruling did not reach certain matters, such as other asserted breaches of Section 3(a), appropriate remedies or damages for breach of fiduciary duty, acceptability of providing ProLift devices to consultants, and the confidentiality of the transfer price. (Id.) Aegis's arguments reveal the vague and overbroad nature of Life Spine's motion. If Aegis offers evidence regarding these matters at trial and there exists little or no probative value, or the court's prior rulings preclude the presentation of such evidence, Life Spine is free to object.

However, the court grants the motion to the extent Aegis agrees it is precluded from presenting evidence and argument that:

1. The DBA is valid;

2. The term "Confidential Information" as used in Sections 7(a), 7(b), and 12(b) of the DBA, the terms "fiduciary capacity" and "trustee" as used in Section 3(a) of the DBA, or the term "appropriate action" as used in Section 7(b) of the DBA are ambiguous;

3. Aegis did not fail to educate Tony Ahn or Jack Lee of Aegis's obligations under Section 7(b) of the DBA;

4. Life Spine cannot bring a cause of action for breach of contract based on non-performance;

5. Section 15(h) of the DBA is unenforceable;

6. Aegis and Life Spine entered into an implied-in-fact contract after expiration of the DBA;

7. Section 3(a) of the DBA only required that Aegis keep custody and/or control of the ProLift devices; and

8. Aegis did not breach Section 7(a) by using the transfer price list for its own business purposes.

(Id. at 9-10.) To be clear, this is not an exhaustive list of evidence to be excluded. The court's prior rulings are law of the case and cannot be relitigated at trial without a showing of good cause. *See Gen. Citrus Int'l Inc.*, 2009 WL 2486164, at *3 (finding subject matter of plaintiff's motion *in limine*, which sought to exclude argument or evidence at trial regarding matters decided on summary judgment, governed by "law of the case doctrine" (internal quotations and citation omitted)).

## Conclusion

For the foregoing reasons, Life Spine's Motion No. 1 is granted in part and denied in part, and Aegis's Motion No. 1 is denied.

ENTER:

Young B. Kim
United States Magistrate Judge

9