UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., | ) |
| | ) No. 19 CV 7092 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| AEGIS SPINE, INC., | ) |
| | ) November 30, 2023 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Before the court are Plaintiff Life Spine, Inc.'s ("Life Spine") and Defendant Aegis Spine, Inc.'s ("Aegis") motions *in limine* No. 2. For the following reasons, both motions are granted in part and denied in part:

### Background

This is an action between two medical device companies that develop and market "expandable cage" spinal implants. (R. 494, Mem. Op. and Order at 2.) Life Spine alleges that Aegis stole confidential information and breached contractual obligations in order to develop AccelFix-XT, a medical device that directly competes with Life Spine's ProLift Expandable Spacer System ("ProLift"). In defense, Aegis argues that ProLift is not innovative and does not contain trade secrets, and, in any event, Aegis's parent company, L&K Biomed Co., Ltd., independently developed AccelFix products. The parties have filed various motions *in limine* in preparation for the January 16, 2024 jury trial in this case. (R. 542.) This order addresses each party's motion *in limine* No. 2. (R. 557; R. 569.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436 440 (7th Cir. 1997). Accordingly, evidence may be excluded pursuant to a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

Analysis

A.   Aegis's Motion No. 2

The motion is granted in part and denied in part. The court bars Life Spine from arguing or presenting evidence at trial about the absence of a forensic examination, but denies Aegis's request to preclude argument or evidence on the issue of whether L&K design history files ("DHFs") for the AccelFix-XL ("XL") and AccelFix-XTP ("XTP") accurately reflect the design and development of those products.

Aegis seeks to exclude argument and evidence suggesting that XL and XTP DHFs are not authenticated. (R. 557, Def.'s Mot. No. 2.) In June 2022 Life Spine moved to compel a forensic analysis of these DHFs because it questioned "the authenticity of the documents in the files and suspect[ed] that L[&]K deliberately created and/or inserted many" of those documents after the court issued a preliminary injunction emphasizing the absence of such documents in the XT file. (R. 416.) The court denied the motion to compel as untimely but noted that "the authenticity of the documents in the files may surface again in the context of admissibility of certain documents as evidence" at trial. (Id.) Aegis now asks the court to preclude Life Spine from suggesting that a forensic examination of the XL and XTP DHFs would have shown the materials were manufactured or altered, or that they "do not reflect an accurate record of the design and development" of the XL and/or XTP products. (R. 557, Def.'s Mot. No. 2 at 1.) Life Spine responds that it does not intend to refer to "the absence of a 'forensic examination' at trial or elicit

3

testimony related to the same," or challenge the admissibility of the DHFs "on the grounds of authenticity." (R. 583, Pl.'s Resp. at 6-9 & n.1.) The court accepts Life Spine's representation and grants the motion on this narrow basis.

However, Life Spine opposes the motion to the extent it seeks to exclude evidence about the "nature" of the DHFs themselves, which Life Spine argues is "core to this case" because Aegis relies on the DHFs for its independent development defense. (Id. at 5, 7.) Specifically, Life Spine objects to Aegis's attempt to foreclose argument or evidence showing that the DHFs "do *not* reflect an accurate record of the design and development of XL and XTP." (Id. at 6-7 (emphasis in original).) Life Spine contends the DHFs include "false information," undercutting Aegis's reverse engineering defense, and argues the jury should be able to weigh the credibility of witnesses who "created" such documents, including Sungak Choi. (Id. at 7.) To develop evidence about the creation of the DHFs, Life Spine says it will need to ask witnesses about what "could loosely be construed as relating to computer 'forensics'" issues, such as information not included in scanned documents that would have been in original digital versions. (Id. at 8.) Life Spine argues that if the motion were granted, it would be barred from asking these types of questions, without "the necessary context" for understanding why such questions are appropriate. (Id.)

The court agrees with Life Spine on this point. Although Life Spine may not challenge the admissibility of the DHFs on the basis that they have not been forensically analyzed, Life Spine must be permitted to attack the credibility of the files and the weight the jury should afford them. Whether argument or evidence will

4

be permitted at trial regarding the "accuracy" of the DHFs in recording the design and development of XL and XTP products largely depends on the context in which such evidence is offered. As such, and consistent with its comments when denying Life Spine's earlier motion to compel, the court declines to impose a blanket bar on Life Spine from discussing the nature of the DHFs and whether they are credible records.

**B.    Life Spine's Motion No. 2**

The motion is granted in part and denied in part. Aegis is barred from arguing or presenting evidence regarding: (1) the claims alleged in the 2019 False Claims Act lawsuit against Life Spine ("FCA Lawsuit"); (2) any alleged wrongdoing or culpability by Life Spine associated with the FCA Lawsuit; and (3) the terms of Life Spine's settlement of the FCA Lawsuit. The motion is otherwise denied because Life Spine has not shown that a blanket exclusion is warranted as to evidence regarding the FCA Lawsuit that Aegis may use to rebut Life Spine's damages theories or for its defenses.

Life Spine asks the court to bar Aegis from arguing or presenting evidence regarding the FCA Lawsuit, which Life Spine settled without admitting liability. (R. 569, Pl.'s Mot. No. 2.) Life Spine argues the FCA Lawsuit is not relevant here, and any reference to it at trial would result in significant prejudice to Life Spine and juror confusion. (Id. at 4-5.) For support Life Spine points to 11 exhibits on Aegis's trial exhibit list, including what it describes as a "sensational" and "irrelevant"

5

industry newsletter with the headline, "Life Spine execs allegedly paid surgeons millions in kickbacks." (Id. at 1-2, Exs. 2-3 (citing DX-515, DX-516).)

Life Spine also notes that Aegis's damages expert, John Jarosz, intends to testify that the FCA Lawsuit, not Aegis's allegedly wrongful acts, caused Life Spine's damages. (Id. at 2 (citing R. 451, Def.'s Resp. to Exclude Jarosz's Opinions at 3-10); see also R. 427, Pl.'s Mot. to Exclude Jarosz Ex. A ¶¶ 23, 134-38 (Jarosz's opinions that Life Spine's damages expert "largely ignore[d]" the extent to which the FCA lawsuit impacted demand for Life Spine's ProLift and that Life Spine "acknowledged wrongdoing" in settling the lawsuit).) Life Spine claims that Jarosz's reliance on the FCA Lawsuit is misplaced because any suggestion that Life Spine lost customers because of the lawsuit is speculative and lacks a reliable basis. (R. 569, Pl.'s Mot. No. 2 at 2; see also R. 512, Mem. Op. and Order at 21.)

Life Spine represents that Aegis relies on two pieces of evidence to support its contention that the FCA Lawsuit is relevant to its defenses: (1) an August 2019 email from Heidi Cha, Aegis's former marketing manager, to Life Spine's then-sales manager, indicating that Aegis's customers "no longer wish to utilize Life Spine products due to recent allegations" in the FCA Lawsuit; and (2) a sales data chart showing Life Spine's ProLift sales decreased after the FCA Lawsuit was made public. (R. 569, Def.'s Resp. at 2-4.) In previous motion practice, Life Spine objected that Cha's email constitutes inadmissible hearsay, (R. 427, Pl.'s Mot. to Exclude Jarosz at 6-7), and Aegis responded that it was not offering the email for the truth of the matter asserted, but rather as one consideration in a lost profits analysis, (R. 451, Def.'s

6

Resp. to Mot. to Exclude Jarosz at 9). Life Spine argued that this concession meant Jarosz's opinion fails. (R. 427, Pl.'s Mot. to Exclude Jarosz at 8-11.) But the court held that "[w]ith proper instruction on the limited basis for which the jury may consider the Cha email, the court finds that both it and the sales data chart are appropriate bases for Jarosz's opinion, and that Life Spine's arguments can be explored on cross-examination." (R. 512 at 22.) That ruling stands.[1]

In any event, Aegis contends that other evidence shows that the FCA Lawsuit is relevant to its defenses. (R. 588, Def.'s Resp. at 2-6.) Indeed, Aegis represents that "[w]itnesses from both parties, all of whom are listed as potential witnesses in the pretrial order, have testified and/or will testify at trial that the [FCA Lawsuit] affected [Life Spine's] business." (Id. at 2.) Aegis also argues that the FCA Lawsuit is relevant to Life Spine's claims for punitive damages, (id. at 4-5), and damages based on a but-for market reconstruction, including "the effect, if any, that public information had on actual or potential customers," (id. at 5-6 (quoting R. 512, Mem. Op. and Order at 21)), and to Aegis's defense that its alleged misconduct was willful or malicious, (id. at 6). Aegis further asserts that evidence showing how the FCA Lawsuit refutes Life Spine's damages theories and supports Aegis's defenses would not unduly prejudice Life Spine or confuse or mislead jurors. (Id. at 7-8.) Aegis also asks in the alternative that the court deny the motion and "provide a jury admonishment to avoid undue prejudice as it sees fit," or preclude Aegis from arguing

---

[1] Before Jarosz's testimony at trial, the parties—either jointly or, if they cannot agree, separately—should submit a proposed limiting instruction on this issue for the court's consideration.

7

or presenting evidence that Life Spine "actually committed the specific criminal allegations set forth" in the FCA Lawsuit. (Id. at 9.)

The court agrees with Life Spine that the FCA Lawsuit—specifically, the underlying allegations, alleged wrongdoing, and terms of the settlement agreement—is not relevant and any "probative value is substantially outweighed by a danger of . . . unfair prejudice" and juror confusion. Fed. R. Evid. 403. Yet Aegis's opposition demonstrates that evidence pertaining to the FCA Lawsuit beyond this narrow subset of information is relevant to the parties' claims and defenses—namely, the FCA Lawsuit's impact on Life Spine's damages theories and Aegis's defenses—and may be admissible depending on the context in which such evidence is offered. Life Spine is free to object at trial if there exists little or no probative value or other evidentiary bases to contest the admissibility of such evidence. That said, the scope of this ruling depends largely on whether Life Spine ultimately decides to raise the FCA Lawsuit on its own during its case-in-chief to minimize any impact it may have on the jury.

## Conclusion

For the foregoing reasons, Life Spine's and Aegis's motions *in limine* No. 2 are granted in part and denied in part.

                                                **ENTER:**

                                                **Young B. Kim**
                                                **United States Magistrate Judge**

8