UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., | ) |
|                  Plaintiff, | ) No. 19 CV 7092 |
| v. | ) Magistrate Judge Young B. Kim |
| AEGIS SPINE, INC., | ) |
|                  Defendant. | ) December 1, 2023 |

**MEMORANDUM OPINION and ORDER**

Before the court are Plaintiff Life Spine, Inc.'s ("Life Spine") and Defendant Aegis Spine, Inc.'s ("Aegis") motions *in limine* No. 3. For the following reasons, Life Spine's motion is denied and Aegis's motion is granted in part and denied in part:

**Background**

This is an action between two medical device companies that develop and market "expandable cage" spinal implants. (R. 494, Mem. Op. and Order at 2.) Life Spine alleges that Aegis stole confidential information and breached contractual obligations in order to develop AccelFix-XT ("XT"), a medical device that directly competes with Life Spine's ProLift Expandable Spacer System ("ProLift"). In defense, Aegis argues that ProLift is not innovative and does not contain trade secrets, and, in any event, Aegis's parent company, L&K Biomed Co., Ltd., independently developed AccelFix products. The parties have filed various motions *in limine* in preparation for the January 16, 2024 jury trial in this case. (R. 542.) This order addresses each party's motion *in limine* No. 3. (R. 558; R. 571.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Accordingly, evidence may be excluded pursuant to a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

## Analysis

**A.     Aegis's Motion No. 3**

The motion is granted in part and denied in part. Life Spine is barred from arguing or presenting evidence at trial regarding: (1) the claims alleged in *United States of America v. Dr. Wilson Asfora, et al.*, No. 16 CV 4115 (D. S.D.) (the "South Dakota Action"); and (2) Aegis's alleged wrongdoing or culpability in connection with the South Dakota Action. The motion is otherwise denied because Aegis has not shown that blanket exclusion is warranted.

Aegis seeks to exclude argument and evidence regarding the South Dakota Action, asserting it is not relevant to the current lawsuit. (R. 558, Def.'s Mot. No. 3.) The complaint in the South Dakota Action alleges the defendants in that case participated in a scheme to defraud Medicare, including by paying doctors to use certain products in exchange for profit distributions. (Id. at 1-2, Ex. 3(A).) Aegis represents that Life Spine used the complaint filed in that action as an exhibit in depositions in this case, even though Aegis was not a named defendant or alleged to have engaged in wrongdoing in the South Dakota Action. (Id. at 1, Ex. 3(A).) Aegis argues that this action has nothing to do with this case because Aegis has not asserted that the South Dakota Action "had any effect on Life Spine's reputation" and "[n]either damages experts" retained here relies on the South Dakota Action. (Id. at 2.) As such, Aegis asks the court to bar any references to the South Dakota Action at trial. (Id. at 1-2.)

Life Spine opposes the motion, arguing that the South Dakota Action undermines a claim put forth by Aegis's damages expert, John Jarosz. (R. 583, Pl.'s Resp. at 9.) That claim relates to alleged lost profits suffered by Life Spine after Aegis introduced "knockoff devices" to the market. (Id.) Aegis seeks to present evidence regarding the impact a 2019 False Claims Act lawsuit ("FCA Lawsuit") against Life Spine had on the lost-profits analysis. (Id.) Life Spine argues it would be unfair to allow Aegis to admit evidence about the FCA Lawsuit, without permitting Life Spine to counter with evidence regarding similar claims alleged in the South Dakota Action. (Id. at 9-10.) Life Spine further contends that the motion would "exclude evidence that the South Dakota Action had no impact on Aegis's sales," resulting in a "skewed view of the facts." (Id. at 10.)

The court agrees with Aegis that the South Dakota Action—at least the underlying allegations and any alleged wrongdoing—is not relevant. The court is skeptical that any other evidence regarding the South Dakota Action is relevant to the parties' damages theories and if so, that its probative value outweighs a danger of unfair prejudice or juror confusion. *See* Fed. R. Evid. 403. Nonetheless, wholesale exclusion of the South Dakota Action at this stage is inappropriate because the context in which Life Spine seeks to admit such evidence may shed light on its admissibility. Aegis may renew its objection as needed at trial.

### B. Life Spine's Motion No. 3

The motion is denied. Life Spine asks the court to exclude argument or evidence of feedback from unrelated distributors or surgeons regarding Life Spine's

4

products. (R. 571, Pl.'s Mot. No. 3.) Life Spine represents that Aegis's exhibit list includes more than 100 documents reflecting feedback regarding an unexpected experience with a Life Spine product.[1] (Id. at 1.) Some of the feedback relates to "devices that Life Spine had provided to Aegis or that Aegis had sold for use by one of its surgeons," (id.), and Life Spine does not object to the admissibility or use of those documents.

However, Life Spine seeks exclusion of feedback evidence relating to its devices "sold by non-party distributors to surgeons with whom Aegis had no relationship," products other than ProLift, and documents regarding consumers' experience dated after the termination of the parties' business relationship. (Id. at 1-2.) Life Spine argues that documents regarding "unrelated products, sold by unrelated distributors, to unrelated surgeons, at unrelated times" are irrelevant and would result in unfair prejudice and juror confusion, including by improperly suggesting that products Life Spine provided to Aegis were flawed. (Id. at 2-3.)

Aegis opposes the motion because it says ProLift's performance "is directly material and relevant to Aegis's defense of Life Spine's claims of trade secret misappropriation and to rebut a misguided lost profits damages theory." (R. 588, Def.'s Resp. at 10.) As to trade secret misappropriation, Aegis asserts that evidence regarding "consumers' perception and experiences of products containing Life Spine's asserted trade secret information is highly probative of whether [that] information

---

[1] Because Life Spine filed the current motion under seal, the court does not describe these documents in detail and includes only the information necessary to explain the court's ruling.

5

provides economic value"—no matter whether Aegis or another distributor sold the devices or whether Life Spine provided the Pro Lift versions to Aegis. (Id.) In particular, Aegis claims it should be permitted to admit evidence showing that "customizations" to Life Spine's devices do not constitute trade secrets and that ProLift "contained design flaws." (Id. at 11.)

Aegis further contends that evidence regarding ProLift's performance explains why the business relationship between Aegis and Life Spine ended. (Id.) According to Aegis, non-Aegis customers' complaints about ProLift's performance also can refute any argument by Life Spine that unexpected experiences were "isolated or solely attributable to user error." (Id.)

In terms of the lost-profits analysis, Aegis argues that Life Spine must show that "but for the conduct of Aegis, Life Spine would have made additional profits." (Id. at 12.) Put another way, Life Spine must prove that "consumers would not have purchased another competitor's product were [Aegis's XT device] not available." (Id.)

The court agrees with Aegis that "evidence regarding negative user experience with ProLift" can help Aegis refute such a showing, and potential consumers' feedback regarding ProLift is probative even if the consumers are not Aegis's customers under the DBA. (Id. at 13.) Further, "[s]o long as Life Spine seeks post-termination damages," consumer experiences after the parties' business relationship concluded is relevant. (Id.) In short, Aegis has demonstrated the potential relevance of this feedback evidence to its defense of trade secret misappropriation and its rebuttal of Life Spine's damages theories, and such evidence may be admissible

6

depending on the context in which it is offered. Life Spine's motion is thus denied, but Life Spine may renew its objection as needed at trial.

## Conclusion

For the foregoing reasons, Life Spine's motion *in limine* No. 3 is denied and Aegis's motion *in limine* No. 3 is granted in part and denied in part.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**