UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIFE SPINE, INC., ) | |
| ) | No. 19 CV 7092 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| AEGIS SPINE, INC., ) | |
| ) | December 11, 2023 |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

Before the court are Defendant Aegis Spine, Inc.'s ("Aegis") motions *in limine* Nos. 4-7. For the following reasons, Motion Nos. 4 and 5 are granted in part and denied in part and Motion Nos. 6 and 7 are denied:

**Background**

This is an action between two medical device companies that develop and market "expandable cage" spinal implants. (R. 494, Mem. Op. and Order at 2.) Life Spine alleges that Aegis stole confidential information and breached contractual obligations in order to develop AccelFix-XT ("XT"), a medical device that directly competes with Life Spine's ProLift Expandable Spacer System ("ProLift"). In defense, Aegis argues that ProLift is not innovative and does not contain trade secrets, and, in any event, Aegis's parent company, L&K Biomed Co., Ltd. ("L&K"), independently developed AccelFix products. The parties have filed various motions *in limine* in preparation for the January 16, 2024 jury trial in this case. (R. 542.) This order addresses Aegis's motions *in limine* Nos. 4-7. (R. 560; R. 562; R. 563; R. 564.)

## Legal Standard

The court's authority to rule on motions *in limine* springs from its inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Accordingly, evidence may be excluded pursuant to a motion *in limine* only when it is inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chi.*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *See Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chi.*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce*, 469 U.S. at 41-42.

Analysis

A.    Motion No. 4

The motion is granted in part and denied in part. Aegis asks the court to bar "ambiguous, misleading or new evidence of alleged trade secret misappropriation, including evidence regarding 'likeness' of product appearance or intended use, or otherwise not directly relating to Life Spine's identifiable alleged trade secrets." (R. 560, Def.'s Mot. No. 4 at 1.) Insofar as the motion seeks to restrict Life Spine from identifying new trade secrets allegedly misappropriated by Aegis, and from asserting trade secrets not identified in Life Spine's supplemental response to Aegis's Interrogatory ("INT") No. 9, the court grants the motion. To avoid juror confusion, the court also precludes Life Spine from referring to the five "fundamental" components of ProLift as "trade secrets." The motion is otherwise denied because it would exclude evidence relevant to Life Spine's trade secret misappropriation and contractual claims—and Aegis cannot use a motion *in limine* as a substitute for a motion for judgment to narrow the trade secrets alleged by Life Spine in its supplemental response to INT No. 9.

Since June 2021 Aegis has sought to require Life Spine to identify with specificity "all trade secrets" claimed in connection with ProLift. (Id. at 1-2.) In its second set of INTs to Life Spine, issued in June 2021, Aegis asked Life Spine to "[i]dentify and describe all trade secrets you claim relate to [ProLift] and provide the factual and legal basis for any such claim." (Id. at 1, Ex. 4-A (including Aegis's INT No. 9).) Life Spine served its initial response and, thereafter, Aegis requested

3

supplementation. (Id. at 1-2.) Life Spine complied, but Aegis continued to object that Life Spine's supplemental responses "lack[ed] any specificity." (Id. at 2.) Aegis then filed a motion to compel Life Spine to provide a more detailed answer to INT No. 9, (id. (citing R. 318, Def.'s Mot. to Compel)), and the court granted that motion in part because Life Spine's response thereto was "unduly broad," (R. 343). The court ordered:

> Plaintiff must either provide a narrative answer or indicate particular portions of specific business documents in response to [INT] No. 9 identifying with specificity those trade secrets Defendant allegedly stole and misappropriated. In other words, what are the specific trade secrets that are at issue in this case? The specific trade secrets must be identified (and amended if discovery yields additional information) at this juncture so that Defendant can narrow its defense efforts . . . . The court expects Plaintiff's amended answer to [INT] No. 9 to include specific information about the implants and instruments provided to Defendant (identifying them by part numbers or versions) along with the necessary measurements. The court also expects Plaintiff to identify the specific customer names and pricing information it claims Defendant misappropriated . . . .

(R. 343; see also R. 560, Def.'s Mot. No. 4 at 2, Ex. 4-B at 30 (attaching transcript from December 8, 2021 motion to compel hearing during which court noted "it's time" for Life Spine to "let Aegis know" the trade secrets being prosecuted so it can "prepare its defense").) About two weeks later, on December 21, 2021, Life Spine served its supplemental response to INT No. 9, listing alleged trade secrets in ProLift. (R. 560, Def.'s Mot. No. 4 at 2.)

Aegis now seeks to exclude three categories of evidence from being admitted at trial: (1) "[m]isleading" evidence relating to five alleged "[f]undamental" features of ProLift; (2) "[a]mbiguous" evidence relating to "catch-all" provisions Life Spine has

4

used to describe alleged trade secrets; and (3) new evidence or testimony regarding Life Spine's trade secret misappropriation claim. (Id. at 3-7.)

Starting with allegedly misleading evidence, Aegis asks the court to bar evidence regarding the five "fundamental" components of ProLift, including the upper endplate, lower endplate, nose ramp, base ramp, and expansion screw. (Id. at 3.) Aegis represents that these components are "in the public domain" and cannot constitute secret features, as Life Spine's technical expert John Ashley has admitted. (Id.) Life Spine responds that Aegis's request would exclude relevant information relating to Life Spine's other claims, including "contractual claims for copying, reverse engineering, and creating derivative products." (R. 591, Pl.'s Resp. at 1.) And while Life Spine agrees not to characterize the five "fundamental" components of ProLift as trade secrets, Life Spine says prosecution of its trade secret case will require it to refer to these components as "fundamental, core, or basic," not only as a way to distinguish them from the two supporting pins in the device but also to provide context regarding "its actual trade secrets." (Id. at 2-3 (internal quotations omitted).)

The court agrees with Life Spine that an order barring *all* references to the "fundamental" nature of ProLift components would be overbroad, as it would bar evidence relevant to Life Spine's non-trade secret claims. The court therefore declines to enter such an order. That said, Life Spine is barred from referring to ProLift's five "fundamental" components as "trade secrets" as it has agreed.

Next, Aegis asserts that the ambiguity in "catch-all" provisions Life Spine has used to describe its alleged trade secrets "open[s] the door to irrelevant and

5

misleading evidence at trial" and, therefore, should be excluded. (R. 560, Def.'s Mot. No. 4 at 4-6.) In particular, Aegis challenges the "ambiguous" nature of the following alleged trade secrets: (1) "Life Spine's submissions in connection with its motion (e.g., Dkts. 183, 191), the hearing testimony of Life Spine's witnesses, and [the court's] memorandum opinion and order (Dkt. 254)"; (2) "the unique combination of precisely engineered and manufactured components and subcomponents that comprise each ProLift implant and ProLift installer, including their precise dimensions and interconnectivity"; and (3) "the unique combination of all the precisely engineered and manufactured components and subcomponents that comprise the ProLift implant, including their interconnectivity and those precise dimensions that are set forth below." (R. 560, Def.'s Mot. No. 4 at 4.) Aegis then lists 17 "tangible structures or theories" Life Spine identifies as relating to "technical" trade secrets—and argues Life Spine should be precluded from asserting that any other technical information constitutes trade secrets. (Id. at 5-6.)

Life Spine responds that Aegis's 17 technical trade secrets "appear to be simplified paraphrases of Life Spine's 24 technical trade secrets" set forth in its final supplemental response to Aegis's INT No. 9—and the paraphrases "do *not* reflect what Life Spine actually identified." (R. 591, Pl.'s Resp. at 3 (emphasis in original).) Life Spine asks the court to deny the motion because Aegis should not be permitted "to literally rewrite the trade secrets its adversary will pursue at trial," and the evidence Aegis seeks to exclude is relevant to Life Spine's contractual claims. (Id. at 3-4.) Life Spine further notes that of the three trade secrets Aegis challenges, only

6

the third appears in Life Spine's final supplemental response to INT No. 9. (Id. at 3.) As to that third trade secret, Life Spine characterizes Aegis's motion as a motion for judgment, rather than a motion in *limine* to exclude certain evidence, arguing that, "if granted, the motion would prevent Life Spine from presenting the trade secret to the jury and therefore from recovering for the misappropriation." (Id. at 3-4.)

The court grants the motion to the extent it seeks to bar Life Spine from asserting that Aegis misappropriated trade secrets beyond those identified in Life Spine's supplemental response to Aegis's INT No. 9. The court denies Aegis's request to rewrite or strike any of Life Spine's asserted trade secrets because a motion *in limine* is not the proper vehicle to pursue such relief. *See Sellers Cap., LLC v. Wight*, No. 15 CV 7644, 2017 WL 3037802, at *5 (N.D. Ill. July 18, 2017) (noting that motions *in limine* are not to be used as substitutes for dispositive motions because they lack the necessary procedural safeguards). The motion is otherwise denied because it would exclude evidence relevant at least to Life Spine's contractual claims.

Finally, Aegis asks the court to bar Life Spine from advancing or eliciting "new evidence or testimony at trial to support assertions" that Life Spine's asserted trade secrets "are, in fact, trade secrets, and that those trade secrets have been misappropriated." (R. 560, Def.'s Mot. No. 4 at 6-7.) In so requesting, Aegis appears to be trying to eliminate any element of surprise at trial, particularly with respect to Life Spine expert Ashley's testimony regarding Life Spine's asserted trade secrets. (Id.) But Aegis's request is too sweeping and would have the court parse through what Ashley purportedly has and has not opined to determine what might constitute

7

"new" evidence or testimony. The court declines to do so at this stage but cautions the parties that experts may not offer opinions at trial they did not include in their reports, although they may respond to rebuttal opinions. Accordingly, the motion is granted in part and denied in part, as explained herein.

**B.     Motion No. 5**

The motion is granted in part and denied in part. Life Spine is precluded from arguing that Aegis's listing of ProLift as a predicate device on its 510(k) FDA submission for XT renders the devices substantially equivalent for liability purposes. The motion is otherwise denied because evidence that Aegis listed ProLift as a predicate device is relevant to Life Spine's trade secret misappropriation and contractual claims, as well as to Aegis's independent development defense, and the probative value of such evidence outweighs potential prejudice or jury confusion.

In its motion, Aegis asserts that presenting evidence regarding its listing of ProLift as a predicate device to XT would invite the jury to view the 510(k) submission "as evidence showing, or an admission of, liability." (R. 562, Def.'s Mot. No. 5.) Aegis cites a string of cases—most of which relate to substantial equivalence in the context of patent cases—it says supports its request. (Id. at 1-3.) But none convince the court to grant the motion. Rather, the cited cases merely confirm "the danger" that jurors could be confused about the implications of listing a predicate product in a 510(k) application for a proposed product. (Id.) In other words, jurors could be misled into believing that substantial equivalence equates to a finding of liability on the trade secret misappropriation claim.

Here, there is little doubt of the probative value of Aegis's listing ProLift as a predicate device on the 510(k) application for XT, as it relates to Life Spine's trade secret misappropriation and contractual claims and Aegis's independent development defense. (R. 591, Pl.'s Resp. at 6-8.) If such evidence were excluded, Aegis could show it listed "two non-ProLift devices, including an L&K device" as predicates for the XT, without ever mentioning its listing of ProLift as a predicate for the same device, as Life Spine points out. (Id. at 6.) And Aegis could show that "Life Spine listed the Opticage device as a predicate for ProLift" to support the "claim that ProLift is a copy of Opticage." (Id.) Such a result would produce a skewed "evidentiary landscape," as Life Spine correctly argues. (Id.) But that is not all. Life Spine says it also would be precluded from submitting evidence regarding two trade secrets relating to shear compression testing, explaining that such testing results are "extremely valuable in the context of a 510(k) application" because the applicant can be assured its device's results are "substantially equivalent to the predicate device's results." (Id. at 7.) Put another way, "[i]f Life Spine is unable to explain why Aegis would have gone to such lengths to obtain testing results for ProLift, or why keeping the results secret has value to Life Spine, it will be extremely difficult to put forward a case for misappropriation of the trade secret test results or for damages." (Id.)

The court finds Life Spine's argument persuasive. Blanket exclusion would hinder prosecution of its claims. Although the court acknowledges a risk of prejudice, "[a]t bottom, the potential for confusion . . . does not outweigh, much less substantially outweigh, the probative value (as to both liability and damages) of the excluded

9

evidence." *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 Fed. Appx. 710, 715 (4th Cir. 2014). Aegis remains free to renew its objection at trial. If Aegis does so, the court will consider whether a limiting instruction is needed.

**C.     Motion No. 6**

The motion is denied. Aegis asks the court to preclude Life Spine from asserting that Aegis is responsible for any alleged acts or omissions by its parent company, L&K. (R. 563, Def.'s Mot. No. 6.) Specifically, Aegis seeks to exclude argument or evidence: (1) imputing L&K's conduct onto Aegis; and (2) suggesting that L&K misappropriated trade secrets. (Id.) As to the first request, Aegis points out that L&K is a "distinct corporate entit[y]" and not a party in this action, and Life Spine never pleaded any theories that would give rise to L&K's liability in this action. (Id. at 2.) As such, Aegis cannot be held liable for the acts or omissions of L&K, unless Aegis was involved. This is true. But here, the parties frequently dispute whether L&K in fact acted alone. (See R. 591, Pl.'s Resp. at 9-10.) Life Spine notes, for example, the court's finding at the preliminary injunction stage that credible evidence showed Aegis worked together with L&K to develop the XT. (Id. at 9.) Life Spine argues that granting the motion would require this court "to resolve, in advance, exactly what acts Aegis was involved with or aware of—something that would usurp the jury's factfinding role." (Id. at 9-10.) The court shares Life Spine's concerns. It simply is not clear the extent to which the parties agree, if at all, that L&K engaged in relevant acts or was responsible for certain omissions without Aegis's involvement or knowledge. As such, Aegis has not shown that a blanket exclusion is warranted.

10

Insofar as there are factual disputes on this issue, the court cannot usurp the jury's role as factfinder.

With respect to the second request, Aegis asserts that only its own conduct is relevant to Life Spine's trade secret misappropriation claim. (R. 563, Def.'s Mot. No. 6 at 3-5.) Aegis frames the primary issue to be decided at trial as: "what did Aegis share, to whom, and under what circumstances?" (Id. at 3.) Aegis says its hands are clean because the DBA authorized Aegis to possess Life Spine's confidential information, and any "use" of that information "downstream" by third parties, such as L&K employees or doctors, occurred without Aegis's involvement. (Id. at 4.) Actions by third parties, including L&K, have no relevance to this question and would be "highly prejudicial," Aegis contends. (Id. at 5.) But in so arguing, Aegis ignores the relevance of such evidence at least to Life Spine's contractual claims. (See R. 591, Pl.'s Resp. at 10.) Furthermore, Aegis ignores Life Spine's theory of the case as it relates to trade secret misappropriation—that Aegis and L&K worked together to develop XT by copying ProLift. In any event, these are matters to be presented at trial and for the jury to decide. As Life Spine points out, a motion *in limine* is not the proper vehicle "to gain judgment that a party did not 'acquire' or 'use' another's trade secrets." (Id. at 10-11.)

**D.     Motion No. 7**

The motion is denied. Aegis seeks to bar Life Spine from presenting "unauthenticated" and "untimely" evidence from non-parties Sung-Soo Lee and Reborn Medical. (R. 564, Def.'s Mot. No. 7.) Lee emerged as a potential key witness

11

late in this case, having developed the predecessor product to the XT while working at Reborn Medical. (Id. at 1.) Lee contacted Life Spine and offered a declaration against L&K and supporting documents thereto. (Id. at 1-2.) Although fact discovery was then closed, the court reopened discovery in response to Life's Spine's motion on April 25, 2023, and permitted Life Spine to depose Lee over Aegis's objection. (R. 529.) But Lee did not appear for his deposition.[1] (Id.; see also R. 549, June 7, 2023 Hr'g Tr. at 11.) Aegis now asks the court to exclude all evidence Lee provided to Life Spine, arguing that his declaration includes inadmissible hearsay, see Fed. R. Evid. 802, and the related documents have not been authenticated and violate the best evidence rule, see Fed. R. Evid. 901, 1002. (R. 564, Def.'s Mot. No. 7 at 1-2.) Aegis also contends that Lee's production to Life Spine is untimely because it occurred 10 months after the close of discovery. Finally, Aegis submits that the documents are irrelevant to issues to be presented and the introduction of the same at trial "will needlessly complicate [the] trial" because Lee and L&K were parties to legal proceedings in South Korea, and "Aegis would be forced to lay out the litigation history" between Lee and L&K "to show [Lee's] perceived biases." (Id. at 3.)

Life Spine counters that Lee's declaration and materials should not be excluded because the "perfunctory reasons" Aegis gives to keep them out are insufficient. (R. 591, Pl.'s Resp. at 13-15.) In terms of authentication, Life Spine

---

[1] Lee was in South Korea at the time, and Aegis did not take further efforts to secure his attendance at a deposition. At the hearing regarding this matter on June 7, 2023, Aegis stated its presumption that the materials provided by Lee would not be admissible at trial. (R. 564, Def.'s Mot. No. 7 at 2.) The court did not rule on that matter at that time.

12

represents that it has "various possible paths" to authenticate Lee's materials, including by asking Lee himself and Doo Chung—who is on Aegis's witness list and was a recipient of many of the messages—questions about the materials. (Id. at 13.) Life Spine says Sangsoo Lee, then head of L&K's research and development team, Sungak Choi, the claimed AccelFix inventor, and Youngbo Ahn, Aegis's CEO, also have "firsthand knowledge" about the devices that appear in the materials—and all three appear on both Life Spine's and Aegis's witness lists. (Id. at 13-14.)

The court declines to exclude the materials at this time. The context in which Life Spine introduces Lee's declaration and supporting documents is important for the court to decide whether hearsay exceptions apply and whether authentication is even necessary for the information to be discussed at trial. In terms of relevance and timeliness, the court disagrees with Aegis because Lee volunteered the information himself after the close of discovery and this information is relevant to the issues of L&K's access to the ProLift device. That said, Aegis is free to object as needed at trial.

## Conclusion

For the foregoing reasons, Aegis's Motion Nos. 4 and 5 are granted in part and denied in part and Nos. 6 and 7 are denied.

                            **ENTER:**

                            *[signature: Young B. Kim]*

                            **Young B. Kim**
                            **United States Magistrate Judge**